### Charles A. Holmes v. Frederick Hall and another.

An instrument in writing, deliberately adopted by the parties, must stand as written, although the parties may have mistaken its legal intent.

A writing, given by a debtor to his surety for the debt, providing that on the failure of the debtor to pay the debt within thirty days, the said surety might take immediate possession of the goods, &c., in possession of the debtor, in the store and premises occupied by him, and out of the same to sell so much as will pay the debt, and a reasonable compensation for his services, and re-deliver the balance to the debtor, is not a mortgage, for it does not purport to change in any way the title to the property.

Neither is such an instrument a pledge—no possession being given with it.

Such an instrument is a mere naked power, not coupled with any present interest, and can not operate to give the surety any rights in the property itself until reduced to possession. And, therefore, the lien of an attachment levied before possession taken under such instrument, must prevail over it.

*Heard April 5th. Decided April 11th.*

Error to Shiawassee Circuit, to which the cause had been transferred by stipulation from Ionia.

The action was trespass, for the taking by defendants in error of certain personal property which plaintiff claimed to have taken, and to be entitled to hold, as sheriff of Ionia county, by virtue of several writs of attachment to him directed and delivered, against the goods, &c., of Hiram T. Barstow, and Henry A. Nash, tested in April and May 1857.

The defendants justified taking the goods under an instrument of which the following is a copy, and which was signed by Barstow and Nash.

"Whereas, Frederick Hall and Stephen F. Page have

signed with us, for our benefit, two certain promisory notes of $1,738 14 each, with interest, said notes bearing date February 4th, 1854, and payable one in fourteen months and one in eighteen months from the date thereof, to Louis S. Lovell, administrator on the estate of John C. Ball, deceased, or order. Now to save the said Frederick Hall, and Stephen F. Page, harmless from the payment of said notes or any part thereof, we hereby agree with said Hall and Page, to pay each of said notes within thirty days from this date, and in default thereof, we hereby authorize said Hall and Page, or their certain agent or attorneys, to take immediate possession of all the goods, wares and merchandise, lumber and shingles, and the personal property, now in our possession and belonging to us, now in and about the store and premises in the village of Ionia, county seat of Ionia county, Michigan, occupied by us as merchants under name and firm of Barstow & Nash, and all notes and accounts, and account books, belonging to us as merchants aforesaid, and the buildings and premises which we may be doing business in, in selling goods, and authorize them out of such property, so taken possession of, to sell so much thereof as will pay the above described notes, and them a reasonable compensation for their services in selling the same, and the balance to re-deliver to us." Which paper was dated February 23d, 1857.

It appeared on the trial, that on February 4th, 1854, Barstow & Nash purchased of said Lovell, administrator as aforesaid, a stock of goods, for the purchase price of which they gave four promissory notes, signed by themselves, with defendants as sureties, for $1,738 14 each, and that to indemnify defendants for signing said notes, Barstow & Nash gave them security upon such stock of goods in a writing, of which the one above copied is an exact copy, except the date and number of notes described, and also a bond and mortgage on real estate in Ionia;

that Barstow & Nash were not indebted at the time, except for said purchase; that on February 23d, 1857, there remained unpaid the two last of the said notes, except the interest, and the said security to defendants was supposed to have expired and become of no effect as to creditors, and for that reason, the instrument under which defendants justify was given. to indemnify said defendants for their remaining liability: that at the time of the taking of the goods by the defendants, from the plaintiff, one of said last two notes had been taken up by Barstow & Nash, and there was unpaid on the other $1,742.

Plaintiff, in reply, proved that defendants never had possession of the goods, &c., under the last mentioned writing, until they took them from plaintiff's possession after the attachments, and that the demands of the several attachment creditors against Barstow & Nash, accrued before February 23d, 1857.

The Circuit Judge charged the jury that the said writing, given by Barstow & Nash to defendants, was a mortgage, and, as such, good and effectual against the creditors of Barstow & Nash, without actual possession of the property covered thereby, provided the jury should find that the same was executed in good faith, and without any intention to defraud the creditors of Barstow & Nash.

The jury under this charge found a verdict for defendants, and the plaintiff brought error.

*J. W. Longyear*, and *C. I. Walker*, for plaintiff in error:

The writing in question is not a *mortgage*, but merely an agreement to pledge the property referred to in a certain contingency.  There is no transfer of property, no conveyance of an estate, no pledge.  It is a mere power to take possession and dispose of so much as may be necessary to imdemnify defendants, and no more: the general property as well as the possession remained in Barstow & Nash.  It is not even a *lien*, because a lien can not

be created by an executory agreement: — *Story on Bailm.* § 287; 2 *Story Eq. Juris.* § 1030; 33 *Eng. L. & Eq.* 413; 6 *Ired.* 309; 3 *Barr*, 208; 40 *Me.* 412; 5 *Flor.* 373; 4 *Barb.* 491; 2 *Barb.* 538. It is clearly not a sale; and it is not a pledge, for possession is the essence of a pledge.

*Bell & Soule*, for defendants in error:

Upon principle, the instrument is a mortgage, because the parties intended it as such: — 4 *Kent*, 138; 10 *N. H.* 305; 29 *Me.* 346. Upon authority, also, it is a mortgage: — 9 *Wend.* 80; 10 *Vt.* 79; 4 *N. Y.* 497; 9 *Barb.* 630; 16 *Barb.* 613; 11 *Texas*, 478.

Even considered as a power, the right of defendants to take possession under this instrument was complete at the end of thirty days, and an attaching creditor can acquire, through his attachment, no higher or better rights than the defendants in the attachment had. — *Drake on Attach.* 220. The right of defendants could not be defeated without the aid of a presumption or proof of fraud, and the question of fraud has been settled by the verdict of the jury in favor of defendants: — 6 *Conn.* 281; *Com. on Sales*, 25, 258; *Brown on Sales*, 3, 10, 11, 353.

CAMPBELL J.:

The whole of this case depends upon the nature of the instrument, executed by Barstow & Nash, to Hall & Page, which was held by the court below to be a valid chattel mortgage.

The instrument bears a close resemblance to the one considered by the Supreme Court of the United States, in the case of *Hunt v. Rousmanier*, 8 *Wheat.* 174, and again in *Hunt v. Rousmanier's Adm.* 1 *Peters*, 1. It was decided in the latter case, that even in equity, an instrument must stand as written, if deliberately adopted by the parties, although they mistook its legal intent; the mistake being one of law merely; and especially so when the rights of

creditors intervene. We are bound therefore to look for the intent of this agreement to the paper itself, and not beyond it.

It is not a pledge, because there was no possession given; and it is not a mortgage, for it does not purport to change, in any way, the title to the property, which was to remain throughout in the makers. It is nothing but a naked power, not coupled with any present interest, and which could never operate to give Hall & Page any rights in the property itself, until reduced to possession. The levy having been made before this, and while the entire title was in the attachment debtors, must prevail over it.

The court below erred in holding the instrument valid as a mortgage, and the judgment must therefore be reversed, and a new trial granted.

The other Justices concurred.