HOLDA *v.* GLICK.

1. APPEAL AND ERROR—DE NOVO REVIEW OF SUIT TO REFORM A LAND CONTRACT.

   A suit to reform a land contract is a chancery case and review thereof in the Supreme Court is *de novo.*

2. VENDOR AND PURCHASER—RIPARIAN RIGHTS.

   Purchasers under land contract relating to city lots along river acquire riparian rights of vendor by operation of law where latter did not reserve such rights.

3. REFORMATION OF INSTRUMENTS—RIPARIAN RIGHTS—LAND CONTRACT.

   In suit to reform land contract relating to city lots along river, there is no occasion to reform contract so as to expressly include such riparian rights as vendor may ·have possessed where the vendor himself does not claim riparian rights adverse to plaintiff purchasers.

4. SAME—MUTUAL MISTAKE—FRAUD—RIPARIAN RIGHTS.

   . In the absence of a showing of mutual mistake or fraud, the fact that purchasers under a land contract relating to city lots along a river may be entitled to riparian rights as a matter of law does not entitle them to have contract reformed to include the lands in the bed of a mill pond on such river since to do so would place the vendor in the position of warranting title thereto.

5. SAME—PARTIES—RIPARIAN RIGHTS.

   Where parties claiming title to filled-in portion of mill pond adverse to plaintiff land contract purchasers were other than defendant vendor and not before the court in suit to reform the land contract so as to specifically include vendor's riparian rights, the rights of such adverse claimants cannot be determined in such suit and only question for determination remained that of whether or not reformation could be had as claimed by plaintiffs.

Mutual mistake and reformation of contract, see 2 Restatement, Contracts, § 504.

6. SAME—MUTUAL MISTAKE—BURDEN OF PROOF—EVIDENCE.

One seeking reformation of a land contract because of alleged mutual mistake has the burden of establishing by clear and convincing evidence that there was a mistake and that it was mutual.

7. SAME—EVIDENCE.

Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of evidence, but only upon a certainty of the error.

8. CONTRACTS—MISTAKE AS TO LEGAL EFFECT—EQUITY.

Mistake as to the legal effect of a written instrument, deliberately executed and adopted, constitutes no ground for relief in equity.

9. REFORMATION OF INSTRUMENTS—LAND CONTRACT—EVIDENCE—DELAY.

In land contract purchasers' suit to reform description of city lots along river so as to include vendor's riparian rights and thereby acquire title to bed of mill pond that had been filled in by plaintiffs and others over a period of years, brought some 14 years after land contract was executed, plaintiffs *held*, to have failed to establish by clear and convincing evidence their allegation of a mutual mistake in the land contract, hence, in the absence of fraud, inequitable conduct or unjust enrichment on part of defendant's vendor, were not entitled to decree of reformation.

Appeal from Jackson; Simpson (John), J. Submitted April 3, 1945. (Docket No. 19, Calendar No. 42,978.) Decided October 8, 1945.

Bill by Vincent Holda and wife against Louis Glick and others to reform a land contract. Bill dismissed as to defendants other than Glick. Decree for defendant. Plaintiff appeals. Affirmed.

*Haskell L. Nichols* and *Kleinstiver & Anderson,* for plaintiffs.

*Rosenburg, Painter & Navarre,* for defendant.

Starr, C. J.   Plaintiffs appeal from a decree dismissing their amended bill of complaint, filed to reform a land contract executed August 4, 1927, by defendant Louis Glick and his wife, Sadie Glick (now deceased), as sellers, and plaintiffs, as purchasers.

Prior to 1851 a dam was built in Grand river in the city of Jackson, which resulted in the flooding of an area of land within the city. This flooded area was referred to as the mill pond. Certain land adjacent to the westerly side of the pond was platted, and later a part of said land was replatted as Water street subdivision. Lots 40 and 41 of this subdivision were contiguous to the mill pond.

On June 16, 1925, defendant Louis Glick purchased the following-described land on land contract, which on December 18, 1930, was conveyed to him and his wife by warranty deed:

"Lots 34, 35, 36, 37, 38, 39, 40 and part of 41 Water street subdivision of parts of Grand River addition and Knapp's addition also all interest in the bed of mill pond adjacent and directly opposite the above described land, which was acquired by Moses A. McNaughton by deed from Henry A. Hayden and Wyley R. Reynolds, city of Jackson, Michigan."

On May 5, 1927, Glick and wife granted plaintiff Vincent Holda a 30-day option to purchase the following-described land on land contract:

"Lots 34, 35, 36, 37, 38, 39, 40 and 41 Water street subdivision to the city of Jackson, according to the recorded plat thereof."

This option was renewed for two successive 30-day periods, and on August 4, 1927, the land contract in question was executed, whereby the Glicks agreed to sell and plaintiffs Holda to purchase the land described in the option. It should be noted

that the description of land in the option and contract with the Holdas did not include the "interest in the bed of mill pond," which was included in the deed to the Glicks.

Plaintiffs took immediate possession of the lots, improved them, and have since used them for coalyard purposes. They claim that since 1927, they have filled in that part of the mill pond adjacent to lots 40 and 41 with earth, refuse, and debris, and thereby added more than 100 feet of usable land to the easterly side of these lots. However, there was evidence indicating that the Pittsburgh Forgings Company, whose plant was located north of plaintiffs' property, had done some of the filling adjacent to said lots. In 1941 or prior thereto, the Forgings company asserted title to the filled-in land and built a fence excluding plaintiffs' therefrom. It appears that several years prior to the institution of the present suit, the channel of Grand river had been straightened and the mill pond drained, and the bed of the mill pond is now dry.

In March, 1941, nearly 14 years after the execution of the land contract in question, plaintiffs filed bill of complaint against defendant Louis Glick, the Consumers Power Company, and the Pittsburgh Forgings Company. They alleged that prior to the execution of the land contract in question, Louis Glick had advised them that in addition to the lots described in the contract, they would also have the rights in the mill pond which the Glicks had acquired from their immediate predecessor in title. They further alleged that the Power company, as the record owner but not actual owner of the filled-in portion of the mill pond, was attempting to sell the same to the Forgings company. They claimed that they were entitled to reformation of the land contract so as to include the filled-in property.

However, they prayed only for injunctive relief against interference with their possession, and for damages. They did not ask for reformation of the contract. In April, 1941, plaintiffs amended their bill of complaint, alleging that because of "mistake or misunderstanding" the rights of the Glicks in the mill pond were not included in the description of property in the land contract, but again they did not ask for reformation. On motion of the Power company the trial court dismissed plaintiffs' bill, on the ground that they could not maintain the action against the Power company until they had first obtained reformation of their land contract with the Glicks. Upon stipulation the trial court entered an order dismissing the bill as to the Forgings company, but without prejudice to plaintiffs' rights pending appeal as to the Power company. On appeal we affirmed the dismissal, but without prejudice to plaintiffs' later securing adjudication of their alleged right to reformation. See *Holda* v. *Consumers Power Co.*, 302 Mich. 478.

In March, 1943, plaintiffs filed an amended bill of complaint only against defendant Louis Glick. They set forth the chain of title leading up to and including the deed of December 18, 1930, to the Glicks, which included the lots in Water street subdivision and also "all interest in the bed of mill pond adjacent." They alleged in substance that through "mutual mistake and misunderstanding" the description of property in the land contract did not include the Glicks' interest in the bed of the pond. They prayed that the contract be reformed so as to include such interest. Defendant Glick answered, denying there was a mutual mistake and misunderstanding as to the description of property in the contract, and denying plaintiffs' right to reformation. At the conclusion of the trial the court

dismissed plaintiffs' amended bill, and they appeal. This being a chancery case, we review *de novo.*

Plaintiff Vincent Holda had been in the real estate business and said that he ''had bought and sold a lot of pieces of property.'' He testified that, prior to executing the option and land contract in 1927, he had examined the mill pond to determine how much of it could be filled in, and that he had examined the records in the register of deeds' office to ascertain if he could fill in the pond if he purchased the adjoining lots. He further testified:

''I asked him (Louis Glick) if he owned the property * * * on Water street. He said, 'Yes,' and I asked him how much he wanted for it. He said, '$7,000.' I said, 'Well, Mr. Glick, $7,000 for such a little piece of land as there is?' He says, 'Well, you not buying only piece of land that there is, but also the land that you will have by filling in clear to the river.' * * *

''*Q.* Did you go out and look at the property?

''*A.* Yes. I went back on property and I spend some time there looking over just how far it could be filled in. And, then, from there I went to the register of deeds and abstract office to see whether there is any right to fill in that low and marshy land. * * *

''With the assistance of clerk attendant there, he showed me several descriptions, and * * * he read it to me, and I read it myself, and under each of those showed that owner of the property has right to fill in, lots 40 and 41. * * *

''After I examined the records there in the register of deeds' office and looked at the property, I again saw Mr. Glick. * *, * I told him that I was down to look up the records, and that he is right about stating that I have right to fill in the property as far as the river is, and that * * * I'll buy the property.''

On cross-examination Vincent Holda further testified:

"*Q.* Is this what you mean, Mr. Holda * * * that you thought that these rights (in the mill pond) that you are talking about now went with those lots, and that, therefore, that did not have to be in writing? * * *

"*A.* That is just what I thought. * * *

"*Q.* In other words, after you investigated at the register of deeds office you believed that if you bought these lots, that they carried with them certain other rights whether it was mentioned in the writing or not? * * *

"*A.* So I thought if I become an owner * * * of those lots I can go as far as the river. * * *

"I was come to the conclusion if I get the deed I get the same privilege that is recorded at the register of deeds. * * *

"*Q.* * * * It was because you believed that when you became the owner of the lots 40 and 41 of the Water street subdivision that you had the right to fill in lots that you didn't insist that anything be put in about the option? * * *

"*A.* That is correct."

Defendant Glick expressly denied representing to plaintiff Vincent Holda that if he bought the lots, he would have the right to fill in the adjacent mill pond. Glick testified:

"*Q.* Did you make any representations or statements to Mr. Holda about any rights in the mill pond or in the river? * * *

"*A.* No. * * *

"*Q.* Did you state anything to Mr. Holda as to any rights that he would have to fill in any land there?

"*A.* I did not. * * *

"*Q.* Did you at any time tell Mr. Holda that if he bought these * * * lots that he was not buy-

ing the lots alone, but that in addition to that, he was buying the right to fill in these lots to the river bank?

"A. I did not.    *    *    *

"Q. State whether or not you saw any employees of the Pittsburgh Forge filling in there?

"A. I saw them filling in with refuse from their forge shop.    *    *    *

"Q. And did you ever remember seeing Mr. Holda or any of his employees down there making any filling in there?    *    *    *

"A. I don't remember any of that.    *    *    *

"Q.    *    *    *    When did you first learn or know that Mr. Holda was claiming any rights in the mill pond, or any rights to fill land there?

"A. The first knowledge that I had of that was a couple of years ago when they started suit.    At or about that time Mr. Holda came to me    *    *    * and wanted me to give him a new contract.    *    *    *

"He wanted this easement into the river attached to it.    Well, I told him that I couldn't do it; that he had on his contract what he had bought, and that's all I would do.    *    *    *    Before that I had never heard of any claims on the part of Mr. Holda that I had sold him, or agreed to give him any additional rights.    *    *    *

"Q.    *    *    *    Was there any mistake on your part in not adding to the description in the land contract that you signed with Mr. Holda any additional things besides the lots that were therein stated?    *    *    *

"A. To my knowledge, I made no mistake. *    *    *

"I didn't know whether I owned anything in back there or not.    And I wasn't going to give him a contract on something I didn't own.    *    *    *

"Not knowing whether I had any rights there, *    *    *    I wouldn't include it in the contract."

There was testimony indicating that the Consumers Power Company claimed fee title to the bed of

the mill pond and that in August, 1936, Holda tried to purchase from the Power company the land which he had filled in adjoining his coal yard. A witness who had been plant manager of the Pittsburgh Forgings Company since 1929 testified regarding the filling in of the mill pond adjacent to lots 40 and 41 as follows:

"*Q.* Now, during that period of time   *   *   * have you known of the plaintiff, Mr. Holda, filling in any land to the east of his lots 40 and 41 into the bed of the mill pond?

"*A.* I can't say that I ever knew of him filling any whatsoever.

"*Q.* Have you people done any filling in in the bed of the mill pond since you have been there?

"*A.* We filled in steadily for two or three years on that end.   *   *   *

"We continued to fill, I can't say how many years, but we, off and on, filled steadily ever since we have been there.   *   *   *

"*Q.*   *   *   * Are you able to tell us whether or not after 1930 and right up until the time this lawsuit was started the Pittsburgh Forgings Company continued to fill in land to the east of the Holda property?

"*A.* We have; we have continued to, in the bed of the mill stream, and to the east of the limits, as shown, of the Holda property. We have continued to fill that in and level it off."

In their amended bill of complaint plaintiffs pray that the land contract in question be reformed to include "the lands in the bed of the mill pond adjoining and directly opposite said lots 40 and 41 and Necker street as hereinbefore described, and as acquired by Moses A. McNaughton by deed from Henry A. Hayden and Wiley R. Reynolds, and the right to fill the same." Therefore, the only question before us on this appeal is whether or not plain-

tiffs are entitled to have the land contract reformed to include the above-described lands in the bed of the pond.

The Glicks, as sellers, did not reserve riparian rights in the mill pond and, therefore, such riparian rights as they possessed undoubtedly passed to plaintiffs by operation of law. *Blain* v. *Craigie,* 294 Mich. 545; *Bauman* v. *Barendregt,* 251 Mich. 67; *Hartz* v. *Detroit, P. & N. Ry.,* 153 Mich. 337. Furthermore, as defendant Glick has not asserted any claim to riparian rights adverse to plaintiffs, there is no issue relative to such rights which can be determined in the present case and no occasion to reform the contract in that regard. In the absence of a showing of mutual mistake or fraud, the fact that plaintiffs may be entitled to riparian rights as a matter of law does not entitle them to have their contract reformed to include the "lands in the bed of the mill pond." To grant plaintiffs reformation of the contract so as to include rights in the filled-in portion of the pond would place defendant, as seller, in the position of warranting title thereto.

It should be kept in mind that the Consumers Power Company and the Pittsburgh Forgings Company apparently claim title to the bed of the pond, but that the conflicting claims of plaintiffs and the Power company and the Forgings company are not before us and cannot be determined in the present suit. Again we reiterate that the only question on this appeal is whether or not plaintiffs are entitled to have their land contract with the Glicks reformed, to include that part of the bed of the pond which they claim to have filled in. They base their right to reformation on the ground of an alleged "mutual mistake and misunderstanding" in the preparation of the contract. The burden was upon them to establish by clear and convincing evidence

that there was a mistake and that it was mutual. The applicable rule was stated in *Crane* v. *Smith,* 243 Mich. 447, as follows:

"To reform a written instrument on account of mutual mistake, the evidence of the mistake and the mutuality thereof ought to be clear and satisfactory, so as to establish the fact beyond cavil. *Burns* v. *Caskey,* 100 Mich. 94; *Kinyon* v. *Cunningham,* 146 Mich. 430; *Lyons* v. *Chafey,* 219 Mich. 493; 34 Cyc. p. 984; 23 R. C. L. p. 367."

In *Lyons* v. *Chafey,* 219 Mich. 493, 498, we said:

"It is fundamental that when it is sought to reform a written instrument on account of a mutual mistake, the evidence of the mistake and the mutuality thereof must be so clear as to establish the fact beyond cavil. *Ludington* v. *Ford,* 33 Mich. 123; *Kinyon* v. *Cunningham,* 146 Mich. 430. The burden of proof rests with the plaintiff and he must convince the court by a clear preponderance of the evidence."

In *Miles* v. *Shreve,* 179 Mich. 671, 679, we said:

"It is elementary that the burden of proof is strongly upon the party asking reformation of a written instrument on the ground of mistake. The proof of mistake must be clear and convincing. 16 Cyc. p. 70; *Vary* v. *Shea,* 36 Mich. 388; *Case* v. *Peters,* 20 Mich. 298.

" 'Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of evidence, but only upon a certainty of the error.' 2 Pomeroy's Equity Jurisprudence (3d Ed.), § 859."

See, also, *Kobylinski* v. *Szeliga,* 307 Mich. 306; *Sobel* v. *Steelcraft Piston Ring Sales, Inc.,* 294 Mich. 211; *Donaldson* v. *Hull,* 258 Mich. 388; *Lee State Bank* v. *McElheny,* 227 Mich. 322; *Schlossman* v. *Rouse,* 197 Mich. 399; 45 Am. Jur. p. 651,

§ 116; 5 Williston on Contracts (Rev. Ed.), § 1582; 2 Restatement of the Law of Contracts, § 504.

Prior to executing the contract plaintiff Vincent Holda made his own investigation and satisfied himself as to the proper description of property to be included in the contract. He concluded that if he owned the lots he would have the right to fill in the adjacent pond. The testimony of plaintiffs and defendant Glick as to their conversations relative to the mill pond is in direct conflict. Defendant expressly denies that he agreed to sell any interest in the bed of the pond, and denies plaintiffs' claim of a mutual mistake. Plaintiffs' testimony relative to their filling in the pond does not, alone, establish that there was a mutual mistake in the terms of the contract, particularly in view of the conflicting testimony as to what amount of filling they did.

Plaintiff Vincent Holda may have been mistaken as to the legal effect of the description of property in the land contract, but there was no showing that this mistaken understanding was mutual between him and defendant Glick. Glick testified that he didn't know whether or not he owned any rights in the mill pond, and he said, ''I wasn't going to give him (Holda) a contract on something I didn't own.'' The contract was prepared by plaintiffs' attorney. It was not ambiguous, and there was no showing that the attorney made a mistake in stating the terms orally agreed upon. In *Crane* v. *Smith, supra,* we said (p. 450):

''The deed was drafted by plaintiffs' attorney, upon full knowledge of the facts and claims. There was no showing that he made a mistake in stating its agreed terms. The mistake, if any, was purely one of law, 'an erroneous conclusion as to the legal effect of known facts.' 40 C. J. p. 1228. Mistake as to the legal effect of a written instrument, deliberately executed and adopted, constitutes no ground

for relief in equity. *Holmes* v. *Hall,* 8 Mich. 66 (77 Am. Dec. 444); *Martin* v. *Hamlin,* 18 Mich. 354 (100 Am. Dec. 181).''

See, also, *Walter* v. *Walter,* 297 Mich. 26; *Martin* v. *Hamlin,* 18 Mich. 354 (100 Am. Dec. 181).

The trial judge, who saw and heard the parties and their witnesses, was in a better position to determine the credibility of and weight to be accorded their testimony. We agree with his opinion, in which he stated:

''It is very striking that the plaintiffs never made any claim for this land in question until the city had changed the bed of the river; and also the fact that the plaintiffs waited nearly 14 years before asking for reformation of the contract when the plaintiffs knew that the option upon which they purchased this land, and the land contract growing out of the same, did not contain such a description as they now try to have incorporated into the land contract.

\* \* \*

''From all of the evidence in the case the court is satisfied that there is no mutual mistake as to the property described, but that the defendant intended to convey only the property mentioned in the land contract.''

We conclude that plaintiffs failed to establish by clear and convincing evidence their allegation of a mutual mistake in the land contract in question. We find no evidence of fraud, inequitable conduct or unjust enrichment on the part of defendant. We have considered other questions presented and conclude that they do not require determination.

The decree dismissing plaintiffs' amended bill of complaint is affirmed. Defendant may recover costs of both courts.

North, Butzel, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred. The late Justice Wiest took no part in the decision of this case.