HOLDA v. PITTSBURGH FORGINGS COMPANY.

1. DEEDS—CONSTRUCTION.

In construing deeds, it is necessary to interpret them in the light of the facts known to the parties at the time the deeds were executed.

2. SAME—GRANT OF EASEMENT OF RIGHT TO FILL.

Clause conveying to grantee ·in warranty deed the right to fill a portion of the bed of millpond owned by grantors "so as to make a deeper lot or a bolder shore" pertained to land otherwise conveyed by the deed and not to land on the other side of the millpond.

3. EJECTMENT—EVIDENCE—ADVERSE POSSESSION.

In action of ejectment in which recovery was not sought upon the theory of adverse possession by plaintiffs, it was not error to reject testimony admissible only on such theory.

4. SAME—EVIDENCE—MILLPONDS—RIGHT TO FILL.

In action of ejectment by owners of land on west side of millpond claiming title under a deed referring to right of previous owners of land on east side of pond to fill such pond "so as to make a deeper lot or a bolder shore" failed thereby to establish title to bed of millpond adjacent to land located to the west thereof.

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur, Deeds, § 183.

Appeal from Jackson; Boardman (Harry D.), J. Submitted June 10, 1949. (Docket No. 30, Calendar No. 44,089.) Decided October 10, 1949.

Ejectment by Vincent Holda and wife against Pittsburgh Forgings Company, a Delaware corporation, to recover possession of real estate. Judgment for defendant. Plaintiffs appeal. Affirmed.

*Kleinstiver & Anderson,* for plaintiffs.

*Rosenburg, Painter & Davidson* and *Butzel, Eaman, Long, Gust & Kennedy,* for defendant.

BUSHNELL, J. This is an appeal from the circuit court of Jackson county from a judgment for defendant in an ejectment action.

The controlling facts are as follows: In 1927, plaintiffs purchased on contract from Louis Glick and wife 8 lots in the Water Street Subdivision of the city of Jackson. The described property, or a portion of it, was bounded on the easterly side by a millpond. The deed through which Glick and wife obtained title to the described lots contained the following:

"Also all interest in the bed of Millpond adjacent and directly opposite the above described land, which was acquired by Moses A. McNaughton by deed from Henry A. Hayden and Wyley R. Reynolds, city of Jackson, Michigan."

In March, 1941, plaintiffs filed a bill in the above circuit court in chancery against Glick, Consumers Power Company and Pittsburgh Forgings Company for a reformation of the land contract in which they claimed they were entitled to reformation so as to include certain filled in property hereinafter de-

scribed. The trial court dismissed their bill of complaint as to Consumers Power Company and upon appeal we affirmed the dismissal without prejudice, see *Holda* v. *Consumers Power Company,* 302 Mich 478. In March, 1943, plaintiffs filed an amended bill of complaint against defendant Louis Glick on the theory that through mutual mistake and misunderstanding the description of property in the land contract did not include the Glicks' interest in the bed of the pond. Upon appeal to the Supreme Court we held that there was no evidence of fraud, inequitable conduct or unjust enrichment on the part of defendant Glick and affirmed a decree dismissing plaintiff's bill of complaint, see *Holda* v. *Glick,* 312 Mich 394.

In March, 1946, plaintiffs filed a declaration against Pittsburgh Forgings Company in an action in ejectment in which they allege that in March, 1941, they were in possession and were the owners of the following described property:

"Commencing at the northwesterly corner of lot 40 Water Street Subdivision (a recorded plat in the city of Jackson, Michigan) thence easterly 214.11' along the northerly line of lot 40 and said lot line extended easterly to the water's edge of Grand river, said point being the place of beginning of this description; thence westerly 163.0' along said northerly line of lot 40 extended; thence southerly 116.3' parallel with Water street; thence easterly 117.0' parallel with northerly line of lot 40 extended to the water's edge of Grand river; and thence northerly along said water's edge of Grand river to the place of beginning of this description;"

that they purchased the property on a land contract from Glick and wife in 1927; that in November, 1945, the property was conveyed to them by warranty deed in pursuance of the terms of said land contract; and that on March 2, 1941, the defendant en-

tered into possession of said premises and now unlawfully withholds possession of the same from plaintiffs.

For an adequate determination of the issues involved in this case we find it necessary to examine the title of the disputed premises from the time of the United States patent. The first link in the chain of title is a patent given to Jeremiah Bennett in 1831. In 1834, title to the northwest quarter of section 2 which contains lot 40 and the disputed premises became vested in Jeremiah Marvin, who, in 1835 conveyed to William Ford, William Ford, Jr., and Jerry Ford. In 1837, William Ford, Jr., conveyed his interest in the bed of the millpond to William Ford and Jerry Ford. As a result of this deed, title to the bed of the millpond was in William Ford and Jerry Ford while title to the remainder of the property remained in the 3 Fords.

In 1839, William Ford, Jr., who again became owner of a half interest in the bed of the millpond from William Ford, and Jerry Ford mortgaged their interests in the bed of the millpond. Thereafter through assignment and foreclosure of these mortgages both undivided one-half interests in the bed of the millpond eventually came to J. D. Beers who thereby became the owner of the entire title to the bed of the millpond. Through subsequent conveyances in 1851 the title to the bed of the millpond came to Henry A. Hayden and Wiley R. Reynolds. On July 26, 1856, Hayden and Reynolds conveyed to Moses A. McNaughton certain specific lots and a block on the east side of the millpond. The deed contained the following language:

"Also so much of the bed of Grand river as lies westerly of a line extending southerly from the south end of the east line of Columbus street continuing said east line of Columbus street southerly in the direction of said street across Grand river not how-

ever obstructing the flow of the water of said river to injury of the mill of said parties of the first part. Also so much of the bed of the millpond connected with the mills of the said parties of the first part situate in the said village lying contiguous to the shore as the said McNaughton or his assigns may desire to use with the lots plotted upon said pond by filling the same up with earth so as to make a deeper lot or a bolder shore not however in any (way) interfering with or injuring the water power of the said pond."

At the time of this conveyance McNaughton owned the shoreland on the west side of the millpond from which lot 40 of Water Street Subdivision eventually evolved. In 1892, Hayden and Reynolds by separate conveyances conveyed the bed of the millpond to George Holton and Andrew J. Weatherwax. These deeds contained the following:

"Also excepting all rights which were conveyed by the said Wiley R. Reynolds, party of the first part, and the other joint owner to Moses A. McNaughton by a deed bearing date July 26, 1856, and recorded in the office of said register of deeds in liber 38 of deeds, page 180, whatever said rights may be, whether to lands covered by the millpond or Grand river, or occupied by Liberty street."

The disputed premises in the instant case are a part of the bed of the old millpond and lie on the westerly side of the Grand river. The premises lie adjacent to and contiguous to lot 40 of the Water Street Subdivision, which lot is now owned by plaintiffs by virtue of their deed from Glicks.

The record shows that after taking possession of lot 40, plaintiffs lowered the grade of the lot, pushing the earth back and filling in the contiguous submerged bed of the millpond to the east of their lot and continued to do so until 1941 when they were dispossessed by defendant company.

It is the claim of plaintiffs that they have title to lot 40 and to such part of the millpond as they or their assigns may desire to fill in to make a deeper lot without injuring water power; that by virtue of the McNaughton deed and prior deeds to McNaughton of which they are subsequent assignees submerged contiguous land passed by conveyance of the abutting lot in the absence of express reservation; and that if any prior severance of riparian rights existed, the intent and legal effect of the McNaughton and Reynolds deed was to establish all rights of riparian ownership to contiguous submerged land in abutting lot owners.

It is the position of defendant company that prior to July 26, 1856, Moses McNaughton had absolutely no right, title or interest in any of the land in the bed of the millpond; that he had no riparian rights as such rights had been previously severed and title to the bed of the millpond was in Hayden and Reynolds; that McNaughton owned only to the edge of the millpond and any grant that he might make could carry no more right or interest than that.

The trial court entered a judgment in favor of defendant and in an exhaustive opinion stated:

"We apprehend that the plaintiffs, if they are entitled to recover at all, must satisfy the court by the preponderance of the evidence that they have title to the disputed premises under one or more theories; namely, (1) by adverse possession, (2) by easements, (3) by specific grant, (4) by appurtenance, (5) by riparian rights. By stipulation and statement in open court, of record, plaintiffs claim no rights in the disputed premises by virtue of adverse possession; so this is eliminated from further consideration by the court. Despite the claim in plaintiffs' declaration, in their proofs, and in their brief, that they hold title to the disputed premises by virtue of specific grant, the court is unable to agree with this

contention. Nowhere in the case is there any evidence of any specific grant of the disputed premises to the plaintiffs. Their only specific grant is *lot 40 of Water Street Subdivision* and they have been denied by both the trial and the appellate courts the right to have their land contract or deed from Glick reformed to include any rights, such as they may be, as set forth in the so-called McNaughton deed. The theory of title by easement must be eliminated from further consideration, since the plaintiffs claim title in fee; and, furthermore, ejectment will not lie to recover easements. See *McMorran Milling Co.* v. *Pere Marquette Railway Company,* 210 Mich 381; *Hasselbring* v. *Koepke,* 263 Mich 466 (93 ALR 1170). In any event, plaintiffs themselves make no claim to title here by easement. The theory of title by appurtenance must also be rejected by the court, since land cannot be appurtenant to land. See 16 Am Jur, p 605. Gates, Michigan Real Property, § 574; 1 Thompson, Real Property (Perm ed), p 535. Upon the trial of this cause, the court sought to have plaintiffs' counsel exactly state the theory upon which his clients claimed title to the disputed premises, but, aside from the concession that no claim was made of title by adverse possession, plaintiffs did not succeed in clarifying the issues in these respects. Nevertheless, by the process of elimination, this court is forced to the conclusion that if the plaintiffs have any claim of title here, upon the facts and the law applicable thereto, it must necessarily rest upon the theory of riparian rights.  *  *  *

"Nowhere in a rather extensive research into the question has this court been able to find, either in texts or in case opinions, any statement of law, directly or indirectly, which would indicate that *a right to fill* is an incident of riparian ownership. On the contrary, all the law examined on the subject indicates directly the contrary to be true. In the instant case, as hereinabove pointed out, Hayden and Reynolds owned title to the bed of the millpond by conveyances in evidence in this case. Their rights of

flowage were, therefore, not obtained by prescription, by user, or by contract, but by outright ownership of the bed of the pond.  Such ownership divested the shore-land owners of their otherwise existing riparian rights, McNaughton, at the time of the deed from Hayden and Reynolds, July 26, 1856, therefore owned no riparian rights in the bed of the millpond.   Even if he had owned riparian rights, as hereinabove pointed out, it is extremely doubtful, to say the least, if such riparian rights alone could be claimed to extend to the right to fill in the bed of the pond 'so as to make a deeper lot or a bolder shore.'

"It is the plaintiffs' contention, as pointed out above, that the so-called McNaughton deed from Hayden and Reynolds, in 1856, re-established and re-created riparian rights in McNaughton.   This court cannot place any such interpretation upon the McNaughton deed.   Leaving aside consideration of what was in contemplation of the parties, Hayden, Reynolds, and McNaughton, in 1856, some 91 years ago—and this court cannot possibly speculate on that subject—it seems clear that the effect of the McNaughton deed was to give to McNaughton a right in the nature of an easement from Hayden and Reynolds to fill lots abutted on the millpond by McNaughton over 'so much of the bed of the millpond connected with the mills of the said parties of the first part   *   *   *   so as to make a deeper lot or a bolder shore, not, however, in any way interfering with or injuring the water power of said pond.' This right in the nature of an easement was applicable to lots owned by McNaughton on the *east* side of the millpond.   Lot 40 is on the *west* side of the millpond. From the evidence there is nothing for the court to determine as to whether or not McNaughton ever exercised this right.   Furthermore, from the evidence, there is nothing for the court to conclude as to just where on the pond 'the mills of said parties of first part' were located; and the right by the deed was confined to that portion of the bed of the mill-

pond described as 'so much of the bed of the millpond *connected with the mills* of said parties of the first part.'

"In the opinion of the court, this so-called Mc-Naughton deed was not a re-creation or a re-establishment of riparian rights in shore owners, such as McNaughton, and was not intended to be. On the contrary, it was a deed conveying a right in the nature of an easement to fill certain lots by earth so as to make 'a deeper lot or a bolder shore line,' which is not an incident of riparian ownership, and which had to be conveyed in the manner it was in order to confer any such right upon McNaughton. *The plaintiffs here do not have any such rights conveyed them either by specific grant or otherwise.* * * *

"Aside from all the other difficulties involved in the issues here confronting this court in sustaining plaintiffs' claims, as above pointed out, is the difficulty of positively identifying the claimed land. The water power has long since ceased to be used, the dam is no longer in existence, the old natural river bed of the Grand river has been changed and straightened, and the bed of the present stream is now conceded to lie somewhat easterly from its old natural water course. In addition, the shore line of the old millpond cannot now definitely be established, since the millpond, as such, has ceased to exist in this area. Under such circumstances, we apprehend that it would be impossible for this court to identify and to describe with any degree of certainty the land to the rear of lot 40, which was once the bed of the old millpond, even if the plaintiffs had any riparian rights therein. To be sure, the court has been furnished with a description of the disputed land, but the court can find no evidence in the case that shows where the old river bed was, where the center line or thread of the stream was, and where the shore line of the old millpond existed as of 1856. Possibly this situation alone should be sufficient for the court to deny the plaintiffs' relief they seek, under the

well-recognized principles of law applicable to the recovery of *specific* lands in ejectment actions."

The principal issue in the case at bar grows out of certain phraseology contained in the so-called "McNaughton deed" dated July 26, 1856, wherein Hayden and Reynolds conveyed to McNaughton by warranty deed certain specific lots and block on the east side of the millpond.

The following language is found in the deed:

"Also so much of the bed of the millpond connected with the mills of the said parties of the first part situate in the said village lying contiguous to the shore as the said McNaughton or his assigns may desire to use with the lots plotted upon said pond by filling the same up with earth so as to make a deeper lot or a bolder shore not however in any (way) interfering with or injuring the water power of the said pond."

The trial court concluded that the above "right to fill" clause referred only to the east side of the millpond since the deeds exchanged by Hayden and Reynolds and McNaughton in July, 1856, dealt with specific lots and a block on the east side of the pond. In our review of the record with reference to the date of the exchange of the deed as above mentioned, we come to the same conclusion as did the trial court. We also conclude that plaintiffs do not have a specific grant to the described land nor does any such specific grant appear in plaintiffs' chain of title. The language of the "right to fill" clause does not refer to land on the west side of the millpond.

In construing deeds it is necessary to interpret them in the light of the facts known to the parties at the time the deeds are executed. In the record before us it is impossible to identify the land or determine what was intended by the so-called "right to fill" clause except that it referred to land on the east side of the pond.

We are not in accord with plaintiffs' claim that the legal effect of the McNaughton and Reynolds deed of 1856 was to establish all rights of riparian ownership to contiguous submerged land in abutting landowners. If plaintiffs are to prevail upon this theory they must show that Hayden and Reynolds intended to and did convey the bed of the millpond to McNaughton and reserved only the flowage rights. We note that the deed to McNaughton contains no reference to riparian rights, nor does it make any attempt to convey the bed of the millpond. An indication that no such conveyance was intended lies in the fact that subsequent grantees of Hayden and Reynolds continued to convey the bed of the millpond and did not merely assign their flowage privileges.

It is also urged that the court was in error in denying plaintiffs the right to prove that they filled in the pond bed gradually from 1927 to 1941. This proof could only be offered on the theory of adverse possession and since plaintiffs did not have possession of the disputed land a sufficient length of time to claim title by adverse possession it was not error to reject the offered testimony.

From a consideration of all the facts and circumstances we are of the opinion that plaintiffs have not sustained the proofs necessary to establish an action in ejectment. The judgment of the trial court is affirmed, with costs to defendant.

BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.

SHARPE, C. J., did not sit.