# STATE OF MICHIGAN

# COURT OF APPEALS

SPECTRUM HEALTH HOSPITALS,
SPECTRUM HEALTH PRIMARY CARE
PARTNERS, doing business as SPECTRUM
HEALTH MEDICAL GROUP, and REED CITY
HOSPITAL CORP., doing business as
SPECTRUM HEALTH REED CITY CAMPUS,

UNPUBLISHED
February 23, 2017

Plaintiffs-Appellants,

v

No. 330914
Kent Circuit Court
LC No. 14-011452-NF

AUTO-OWNERS INSURANCE CO., HOME-
OWNERS INSURANCE CO., MICHIGAN
ASSIGNED CLAIMS PLAN, MICHIGAN
AUTOMOBILE PLACEMENT FACILITY, and
JOHN DOE INSURANCE CO.,

Defendants-Appellees.

Before: BORRELLO, P.J., and MARKEY and M. J. KELLY, JJ.

PER CURIAM.

Plaintiffs, medical providers to Angela Grant who was injured in a March 2014 motor vehicle accident, appeal by right the trial court's order granting defendants Auto-Owners Insurance Company and Home-Owners Insurance Company (Auto-Owners),[1] summary disposition of plaintiffs' complaint for no-fault personal protection insurance (PIP) benefits under a policy Auto-Owners issued to Vera Herington, Grant's mother-in-law. We affirm.

The material facts are undisputed. Vera Herington is the mother of Arthur Grant, the registered owner of the 1994 Buick that Arthur's wife, Angela Grant, was driving when she was involved in an accident resulting in her receiving significant injuries for which plaintiffs

---

[1] The name of both Auto-Owners Insurance Company and Home-Owners Insurance Company appear on the automobile insurance policy at issue; the parties refer to both collectively in the singular as Auto-Owners. It appears that both companies are part of the Auto-Owners Insurance Group, although the exact relationship of the companies is not clear from the record.

-1-

provided "reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). At the time of the accident in March 2014, Arthur and Angela had been married for over twenty years and resided together in Leroy, Michigan. In late 2013, Arthur and Angela experienced marital difficulties that resulted in Arthur temporarily living with his mother in her Bitely, Michigan home. Arthur and Angela resolved their marital difficulties, and Arthur returned to the marital home to reside with Angela in February 2014. While Arthur resided with Vera, the 1994 the Buick remained at the marital home, but Arthur took the keys with him.

Vera Herington has had an automobile insurance policy with Auto-Owners for many years under which she insured several vehicles that she owned or had interest in. During the period of time that Arthur resided with her when Arthur was having marital difficulties with Angela, Herington went to her long-time insurance agent and added Arthur as a rated driver and Arthur's 1994 Buick as an insured vehicle to her Auto-Owners policy. The addition of the Buick to the policy occurred on January 4, 2014 with the policy term running through July 4, 2014. The policy change for the Buick included personal injury protection insurance coverage for "full medical and full wage" and Auto-Owners assessed a premium of $217.40 for this coverage.

At the time of the accident, neither Arthur nor Angela resided with Vera Herington at her home in Bitely, Michigan. Instead, Arthur and Angela lived together in Leroy, Michigan. Further, neither Arthur nor Angela maintained insurance on Arthur's 1994 Buick as required by MCL 500.3101(1), nor did they maintain any other no-fault insurance.

At some point, Angela Grant submitted a claim for no-fault benefits to Auto-Owners under Vera Herington's auto insurance policy. On April 22, 2014, Auto-Owners' representative denied Angela's claim on the basis that its policy did not come within the statutory priority list of insurers liable to pay no-fault benefits set forth in MCL 500.3114.

In March, April, and May 2014, plaintiffs' representatives submitted to Auto-Owners "UB-04 billing forms, Itemized Statements and medical records documenting [their] claims" for no-fault benefits in connection with the "reasonably necessary" services provided to Angela Grant because of for her accidental injuries. It is not clear if Auto-Owners ever formally responded to these claims, but they were not paid.

On August 14, 2014, plaintiffs submitted their claim for no-fault benefits regarding charges for treatment they provided Angela Grant related to the March 2014 accident to the Michigan Assigned Claims Plan (MACP). On September 15, 2014, the MACP denied plaintiffs' claim because "[t]he owner, co-owner or constructive owner of an uninsured vehicle or motorcycle involved in an accident is not entitled to PIP benefits." See MCL 500.3113(b), and MCL 3101(2)(k)(*i*).

On December 9, 2014, plaintiffs filed their complaint for no-fault benefits against Auto-Owners, which included Count II, a claim for mandamus to require the MACP or the Michigan Automobile Insurance Placement Facility (MAIPF) to assign plaintiffs' claim to a no-fault insurer and Count III, a claim for no-fault benefits from a "John Doe" insurer to be assigned by the MACP. Counts II and III were later dismissed on motion for summary disposition with an

order entered July 31, 2015. The trial court reasoned with respect to these clams that either Auto-Owners was liable or else Angela Grant was excluded from recovery.[2]

On September 18, 2015, Auto-Owners moved for summary disposition on the grounds that it was not the priority insurer under MCL 500.3114 because neither Angela Grant nor Arthur Grant was a named insured under its policy with Herington and because at the time of the accident neither Grant was a resident relative of Herington. Furthermore, Auto-Owners argued that Vera Herington was not an owner of the 1994 Buick, MCL 500.3101(1)(k), but rather the Buick was registered to and owned by Arthur Grant.

Plaintiffs opposed the motion and invited the trial court "to exercise it discretion under MCR 2.116(I)(2) to reform the Auto-Owners policy to include Arthur Grant as a named insured, and, except as to the issue of damages, grant summary disposition in Spectrum's favor."

On November 19, 2015, the trial court heard the parties' arguments. The trial court distinguished the primary case on which plaintiffs relied: *Corwin v Auto Club Ins Ass'n*, 296 Mich App 242; 819 NW2d 68 (2012). The trial court determined that while the situation in *Corwin* had some similarities to the present case, there were also significant differences. Specifically, trial court reasoned, the *Corwin* Court found that the defendants in that case set up a scheme that violated the public policy of the no-fault act. Furthermore, the plaintiff in *Corwin* believed he had insurance on the vehicle involved in the accident. In the present case, the Grants were aware they had no insurance, and Auto-Owners had done nothing to violate the no-fault act. Also, the trial court reasoned that "reformation is a fairly radical step which Courts take reluctantly and only when certain circumstances are clearly established and the need for it is obvious . . . ." Therefore, the trial court declined to reform the policy and granted Auto-Owners summary disposition. The trial court denied reconsideration and plaintiffs appeal by right.

The trial court's decision to grant summary disposition and the many included questions of law such as the interpretation of statutes and contracts are reviewed de novo. *Burkhardt v Bailey*, 260 Mich App 636, 646; 680 NW2d 453 (2004). Similarly, whether a person has an "insurable interest" to support an insurance contract, *Morrison v Secura Ins Co*, 286 Mich App 569, 572; 781 NW2d 151 (2009), and whether a given set of facts justify the granting of equitable relief, *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 371; 761 NW2d 353 (2008), are both question of laws reviewed de novo.

A motion for summary disposition under MCR 2.116(C)(10) is reviewed de novo, testing the factual sufficiency of a claim and must be supported by affidavits, depositions, admissions, or other documentary evidence. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). The trial court in deciding the motion must view the substantively admissible evidence submitted up to the time of the motion in a light most favorable to the party opposing the motion. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). The motion should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue

---

[2] Plaintiffs have not appealed this ruling.

of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*.

We conclude that the trial court properly granted summary disposition to Auto-Owners. Angela Grant is not entitled to no-fault benefits under Auto-Owners policy because she is not a named insured, and she is not a relative domiciled in the household of the named insured, Vera Herington. 500.3114(1). Angela Grant also is not entitled to no-fault benefits under Herington's insurance policy because Auto-Owners is not the insurer of either Arthur Grant, the owner of the vehicle, or Angela Grant its operator. MCL 500.3114(4). Further, Angela Grant was not entitled to no-fault benefits under MCL 500.3113(b) because she was also its "owner" under MCL 500.3101(2)(k)(*i*) as "having the use" of the Buick "for a period that is greater than 30 days."

Plaintiffs' right to no-fault benefits from Auto-Owners depends on whether Angela Grant has a right to no-fault benefits. See *Chiropractors Rehab Grp, PC v State Farm Mut Auto Ins Co*, 313 Mich App 113, 126-130; 881 NW2d 120 (2015) (and cases it cites). On the facts of this case, the trial court properly denied plaintiff's request for reformation by correctly distinguishing the sole published case on which plaintiffs rely, *Corwin*, 296 Mich App 242, finding that the public policy concerns of that case were not present in the instant case and because the injured party in *Corwin*—the statutory owner of the leased vehicle required to maintain security— believed he had been paying for no-fault insurance. Auto-Owners alternative argument to affirm the trial court because plaintiffs are not parties to the contract between Auto-Owners and Herington and, therefore, lack standing to seek its reformation, also has merit.[3] So, the trial court properly denied reformation of Herington's insurance policy. Because Angela Grant cannot claim no-fault benefits from Auto-Owners under MCL 500.3114, see *Belcher v Aetna Cas & Surety Co*, 409 Mich 231, 251-252; 293 NW2d 594 (1980) (holding that § 3114 is both a priority and an entitlement provision), and plaintiffs' rights to no-fault benefits depend on Angela Grant's rights, see *Chiropractors Rehab Grp*, 313 Mich App at 126-130, plaintiffs cannot claim no-fault benefits under the Auto-Owners policy. Consequently, the trial court correctly granted Auto-Owners summary disposition.

Plaintiffs present no argument that they have a right to no-fault benefits from Auto-Owners issued to Herington absent the policy being reformed to add Arthur Grant as a named insured. Plaintiffs' argument relies almost entirely on *Corwin*, contending that case requires the reformation of every automobile insurance contract when the named insured purchases PIP coverage with respect to a motor vehicle but lacks an insurable interest. Plaintiffs further suggest that MCL 500.3101(3), providing that "[a] policy of insurance represented or sold as providing

---

[3] Contrary to plaintiffs' argument, preservation requirements regarding a claim of error on appeal do not apply. Instead, without filing a cross-appeal, Auto-Owners may "urge an alternative ground for affirmance, even if the alternative ground was considered and rejected by the lower court or tribunal." *Boardman v Dep't of State Police*, 243 Mich App 351, 358; 622 NW2d 97 (2000), citing *Middlebrooks v Wayne Co*, 446 Mich 151, 166, n 41; 521 NW2d 774 (1994). Similarly, this Court "will not reverse when a trial court reaches the right result for a wrong reason." *Neville v Neville*, 295 Mich App 460, 470; 812 NW2d 816 (2012).

security is considered to provide insurance for the payment of the benefits," requires adding as a named insured a person that does have an insurable interest in the vehicle.

" 'A court of equity has power to reform [a] contract to make it conform to the agreement actually made.' " *Casey v Auto Owners Ins Co*, 273 Mich App 388, 398; 729 NW2d 277 (2006) (citation omitted; alteration added). The theory of reformation is that where evidence clearly shows that both parties reached an agreement but because of mutual mistake, or a mistake on the one side and fraud on the other, the contract does not express the parties' true intent, a court of equity will reform the instrument so that it expresses the parties' actual intent. *Ross v Damm*, 271 Mich 474, 480-481; 260 NW 750 (1935). Reformation will also be supported "where one party to an instrument has made a mistake and the other party knows it and conceals the truth from him." *Retan v Clark*, 220 Mich 493, 496; 190 NW 244 (1922). "A unilateral mistake is not sufficient to warrant reformation" and "[a] mistake in law—a mistake by one side or the other regarding the legal effect of an agreement—is not a basis for reformation." *Casey*, 273 Mich App at 398; see also *Olsen v Porter*, 213 Mich App 25, 29; 539 NW2d 523 (1995) ("reformation will generally not be granted for a mistake of law"); *Holda v Glick*, 312 Mich 394, 405-406; 20 NW2d 248 (1945) ("Mistake as to the legal effect of a written instrument, deliberately executed and adopted, constitutes no ground for relief in equity."). A court must proceed with the utmost caution when considering exercising its authority to reform a written instrument, *Olsen*, 213 Mich App at 28, and the burden is on the party seeking reformation "to establish by clear and convincing evidence" the grounds for granting relief. *Holda*, 312 Mich at 403-404. In this case, plaintiffs have neither alleged nor developed a factual record that supports granting the equitable relief of contract reformation.

Furthermore, Auto-Owners alternative argument to affirm the trial court is meritorious. Plaintiffs were not parties to the contract between Auto-Owners and Herington; consequently, they lack standing to seek its reformation. Additionally, neither Arthur Grant nor Angela Grant is a party to the contract. Michigan caselaw supports that a nonparty to a contract cannot assert a right to reform the contract to which she is not a party. See *Klym v Nida*, 147 Mich App 709, 714; 383 NW2d 93 (1985) (denying accident victim's request to reform the liability limits of the insurance policy of negligent boat operator because "we can find no authority that would permit the plaintiff, who is a complete stranger to the contract, to sue for reformation so that the contract would be more beneficial to himself"); *Harwood v Auto-Owners Ins Co*, 211 Mich App 249, 254; 535 NW2d 207 (1995) (denying reformation to add uninsured owner of the accident vehicle as a "named insured" to a policy owned by uninsured owner's father because mutual mistake or fraud were not alleged and because uninsured owner was "not a party to the insurance contract"); *Mate v Wolverine Mut Ins Co*, 233 Mich App 14, 24-25; 592 NW2d 379 (1998) (denying the injured person's request to reform an insurance contract to be added as a "named insured" because neither mutual mistake nor fraud was alleged and because the injured person "was not a party to the insurance contract"); *Stone v Auto-Owners Ins Co*, 307 Mich App 169, 180; 858 NW2d 765 (2014) (denying reformation to surviving spouse to be added as named insured of insurance policy of surviving spouse's parents, who had added the uninsured accident vehicle owned by deceased spouse to their policy, because neither spouse was a party to the contract between surviving spouse's parents and the insurance company). In sum, plaintiffs lack standing to request reformation of the insurance contract between Auto-Owners and Herington, and the circumstances show at best a unilateral or mutual mistake between the contracting parties as to

the legal effect of the contract. These circumstances will not support reformation of the contract. *Holda*, 312 Mich at 405-406; *Casey*, 273 Mich App at 398.

Plaintiffs' argument—that the public policy evinced by the no-fault act and this Court's decision in *Corwin* nevertheless require that the trial court reform the Auto-Owners-Herington insurance contract—also fails. First, the trial court correctly distinguished *Corwin* on the basis that Chrysler LLC (formerly DaimlerChrysler) had set up a scheme that violated the no-fault act and public policy, whereas in the present case Auto-Owners was not "acting in a manner which is violative of public policy or attempting to subvert a statutory [scheme]."

In *Corwin*, 296 Mich App 242, Chrysler leased a Jeep to its retiree, John Corwin, and acted as a self-insurer by having one of its related companies, DaimlerChrysler Insurance Company (Chrysler Insurance), "front"[4] an insurance policy that covered the Jeep but provided that the named insured was "DaimlerChrysler Corporation and its United States subsidiaries." *Id*. at 248-249. Further, the Chrysler Insurance policy purported to provide John (and his spouse, Vera-Anne) with PIP insurance, and John believed he had such coverage because he paid for insurance as part of his lease payments. *Id*. In fact, this Court found that John had a direct contractual relationship to Chrysler Insurance because "John purchased no-fault insurance for the Jeep Compass through Chrysler Insurance because the insurance premium was deducted from his monthly pension checks. Thus, Chrysler Insurance provided no-fault insurance to the Corwin household and was the Corwins' 'personal insurer.' " *Id*. at 262-263. And in the underlying litigation, the Chrysler defendants pleaded no contest to the allegation that "*the Corwins* had a policy of insurance issued by" Chrysler Insurance. *Id*. at 264 (emphasis in original). Accordingly, *Corwin* is factually distinguished from the present case because the injured party and statutory owner of the Jeep, John Corwin, who was required to maintain security, *id*. at 254, 260, had a direct and indirect contractual relationship with the insurer.

The *Corwin* Court "reform[ed] the Chrysler Insurance policy to comply with Michigan law by including both John and Vera-Anne as 'named insureds' falling within the policy's definition of 'you.' " *Id*. at 247-248. The Court imposed this equitable remedy because "(1) Chrysler LLC and its United States subsidiaries, the named insureds in the policy, do not have an insurable interest and (2) the policy contravenes the legislative intent of the no-fault act." *Id*. at 257. The Court discussed at length why Chrysler (and its subsidiaries) did not have an insurable interest, *id*. at 257-260, but the Court also noted that "[t]he critical issues in this case are whether the Chrysler Insurance policy complies with the no-fault act and, if not, whether the policy must be reformed." *Id*. at 256. In regard to the no-fault act, the Court held that Chrysler's insurance scheme violated the act's intent by "enable[ing] Chrysler Insurance to avoid primary liability for PIP benefits that are payable to injured people that Chrysler Insurance personally insures, i.e., the Corwins[,] . . . whenever the Corwins are a named insured in another no-fault policy in their

---

[4] To "front" an insurance policy is " '[t]he use of an insurer to issue paper—that is, an insurance policy—on behalf of a self-insured organization . . . without the intention of bearing any of the risk.' " *Corwin*, 296 Mich App 248 n 3 (citation omitted). " 'The risk of loss is transferred back to the self-insured . . . with an indemnity or reinsurance agreement.' " *Id*.

household." *Id*. at 262-263. The Court reasoned it would "not allow Chrysler Insurance to avoid the Legislature's intent that an injured person's personal insurer stand *primarily* liable for PIP benefits." *Id*. at 263.

As the trial court in the present case recognized, there is some similarity between this case and that in *Corwin*, but only to the extent that Herington lacked an insurable interest in the 1994 Buick of which her son, Arthur Grant, was the registered owner. Michigan law requires that the named insured have an "insurable interest" to support a valid automobile liability insurance policy. *Morrison*, 286 Mich App at 572. While "public policy forbids the *issuance* of an insurance policy where the [named] insured lacks an insurable interest[,]" it does not require that an otherwise valid insurance policy become void automatically. *Id*. at 573-574. "An insurable interest in property is broadly defined as being present when the person has an interest in property, as to the existence of which the person will gain benefits, or as to the destruction of which the person will suffer loss." *Madar v League Gen Ins Co*, 152 Mich App 734, 738; 394 NW2d 90 (1986). But one need not be the owner or registrant of a vehicle to have an insurable interest adequate to support PIP coverage. *Universal Underwriters Group v Allstate Ins Co*, 246 Mich App 713, 725; 635 NW2d 52 (2001). "A person obviously has an insurable interest in his own health and well-being . . . which entitles persons to personal protection benefits regardless of whether a covered vehicle is involved." *Madar*, 152 Mich App at 738. In the present case, had Arthur been injured while still residing with Herington, he could have claimed PIP benefits under Herington's policy because he did not have insurance of his own. MCL 500.3114(1). So the trial court correctly observed that Herington arguably had an insurable interest concerning PIP coverage regarding the Buick, to which Arthur retained the key while he was living with her.

But even if Herington lacked an insurable interest to support her adding the 1994 Buick to her insurance policy, the remedy would not be to reform the policy to add Arthur as a named insured. Rather, the remedy would be to void that part of the Auto-Owners policy. "A policy is void when there is not an insurable interest." *Corwin*, 296 Mich App 258. Unlike in *Corwin*, where John Corwin believed he had purchased no-fault insurance from the Chrysler defendants, with whom he had a contract relationship concerning the Jeep he leased and the Jeep's insurance that he paid for, neither Arthur Grant, the Buick's registered owner who was required to maintain security on it, MCL 500.3101(1), nor Angela Grant, his spouse and a constructive owner, had a contract relationship with Auto-Owners. Further, both Arthur Grant and Angela Grant were fully aware that the Buick was uninsured, and neither Grant maintained no-fault insurance. And, there is nothing about the Auto-Owners policy that permitted Auto-Owners to shift their priority liability for PIP benefits on behalf of Herington, the policy's named insured, if she were injured in an automobile accident. Thus, nothing in the Auto-Owners policy is contrary to the no-fault act. The only public policy implicated is that Herington lacked an insurable interest in the Buick. But in *Corwin*, the critical issue was whether there was compliance with the intent of the no-fault act. *Corwin*, 296 Mich App 256. That Herington lacked an insurable interest in the Buick does not alter that under the no-fault act it was Arthur's responsibility as its owner and registrant to maintain security. MCL 500.3101(1). In addition, as a co-owner of the Buick, Angela would have the same responsibility to maintain security. *Id*. Moreover, it is the stated policy of the no-fault act that owners who shirk their responsibility to maintain security are denied no-fault benefits. MCL 500.3113(b). It would frustrate the intent of the no-fault act to grant plaintiffs request to reform the Auto-Owners policy to add Arthur Grant as a named insured under these circumstances where the Grants are not parties to the contract, no facts justify reformation under

long-standing caselaw, and where the Grants knowingly failed to maintain security required by the no-fault act. MCL 500.3113(b).

Consequently, for all the foregoing reasons, the trial court properly denied plaintiffs request to reform the insurance contract between Herington and Auto-Owners. The undisputed facts show that Angela Grant is not entitled to no-fault benefits under Auto-Owners policy because she is not a named insured and she is not a relative domiciled in the household of the named insured, Vera Herington. See 500.3114(1). Angela Grant also has no right to no-fault benefits under Herington's Auto-Owners policy because it did not insure either Arthur Grant, the owner of the Buick, or Angela Grant, its operator. See MCL 500.3114(4). Further, neither Grant maintained security for the Buick resulting in Angela Grant's losing entitlement to no-fault benefits. MCL 500.3113(b); MCL 500.3101(2)(k)(*i*). Finally, because plaintiffs right to no-fault benefits depends on Angela Grant's right to no-fault benefits, see *Chiropractors Rehab Grp*, 313 Mich App at 126-130, and Angela Grant has no right to no-fault benefits form Auto-Owners, MCL 500.3114, or any other insurer, MCL 500.3113(b), the trial court correctly granted summary disposition to Auto-Owners.

We affirm. Defendants, as the prevail party, may tax costs pursuant to MCR 7.219.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Kelly