# STATE OF MICHIGAN

# COURT OF APPEALS

CHIROPRACTORS REHABILITATION
GROUP, P.C.,

Plaintiff-Appellee,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant-Appellant.

FOR PUBLICATION
October 29, 2015
9:00 a.m.

No. 320288
Oakland Circuit Court
LC No. 2013-009983-AV

ELITE HEALTH CENTERS, INC.,
CHIROPRACTIC, P.C., and HORIZON
IMAGING, L.L.C.,

Plaintiffs-Appellees,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant-Appellant.

No. 322317
Oakland Circuit Court
LC No. 2014-139132-AV

Before: WILDER, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

WILDER, P.J.

These consolidated appeals are before this Court by leave granted.[1]  In each case, defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), appeals a circuit

---

[1] *Chiropractors Rehab Group, PC v State Farm Mut Auto Ins Co*, unpublished order of the Court of Appeals, entered June 25, 2014 (Docket No. 320288); *Elite Health Ctrs, Inc v State Farm Mut Auto Ins Co*, unpublished order of the Court of Appeals, entered July 11, 2014 (Docket No. 322317).

-1-

court order affirming a district court order denying its motion for summary disposition. In Docket No. 322317, State Farm also challenges the district court's order denying leave to amend its affirmative defenses. We affirm in part and reverse in part.

I

Plaintiffs in both cases are healthcare providers that rendered medical treatment to individuals allegedly injured in motor vehicle accidents. The medical providers brought actions in the district court, pursuant to the no-fault act, MCL 500.3101 *et seq.*, seeking reimbursement for medical expenses related to the treatment rendered. State Farm, the no-fault insurer allegedly responsible for payment of personal injury protection ("PIP") benefits under the no-fault act, filed motions for summary disposition in which it argued, among other things, that the injured parties were not eligible for the payment of PIP benefits and, therefore, the healthcare providers were similarly precluded from seeking such benefits. The district courts denied State Farm's motion for summary disposition in each case.

A

In Docket No. 320288, Raynard Jackson allegedly sustained injuries on or about September 4, 2011, while a passenger in a motor vehicle owned and operated by Mohammed Abdullah. At the time, Abdullah's vehicle was insured under a no-fault policy issued by State Farm. Because of incomplete and conflicting police reports and medical records, there were questions regarding whether Jackson was injured in the accident. Consequently, in response to Jackson's claim for PIP benefits, State Farm requested that Jackson submit to a medical examination ("ME") as permitted under MCL 500.3151 and an examination under oath ("EUO"). Jackson failed to appear for two ME appointments scheduled in February and March 2012. He similarly failed to attend the EUO. In April 2012, State Farm advised Jackson, though his legal counsel, that because of Jackson's failure to cooperate with its investigation of the claim, State Farm was suspending his claim for benefits.

Sometime after the accident, Jackson sought treatment from plaintiff, Chiropractors Rehabilitation Group, P.C. When State Farm failed to reimburse plaintiff for the charges associated with its treatment of Jackson, plaintiff filed a complaint alleging that, pursuant to the no-fault act, it was entitled to reimbursement from State Farm for the services it provided to Jackson. On May 10, 2013, State Farm moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that it was not responsible for charges associated with plaintiff's treatment of Jackson. State Farm asserted that because Jackson failed to cooperate in its investigation of the claims, he was not eligible for coverage under the policy. State Farm then reasoned that Jackson's ineligibility for coverage barred the claims of any healthcare provider seeking coverage on Jackson's behalf.

The district court denied State Farm's motion for summary disposition. The court found that questions of fact existed regarding whether Jackson was eligible for coverage under the no-fault act and whether Jackson's ineligibility would bar the provider's claims. The district court also denied State Farm's motion for reconsideration. On appeal, the circuit court affirmed the district court's order.

B

In Docket No. 322317, Ricky Johnson was purportedly a passenger in a vehicle involved in an accident on June 28, 2012, but the traffic report identified only "Qutrel Monteque" as a passenger. Johnson purportedly gave the police a false name at the time of the accident. On August 23, 2012, Johnson sought treatment from plaintiff Elite Health Centers, Inc. Johnson complained of neck and back pain that he attributed to injuries sustained in the accident. Johnson also sought treatment from plaintiff Horizon Imaging, L.L.C., in September 2012, where he underwent three MRIs.

On September 19, 2012, Johnson filed a claim for PIP benefits with State Farm, which had issued a policy of no-fault insurance to Veretta Robinson, the owner of the vehicle in which Johnson was allegedly a passenger. On January 22, 2013, State Farm requested that Johnson appear for an EUO on February 4, 2013. Johnson failed to appear for this scheduled EUO and later failed to appear at EUOs rescheduled for March 20, 2013 and March 22, 2013.

On September 6, 2013, plaintiffs filed a first amended complaint seeking PIP benefits from State Farm. Plaintiffs sought reimbursement of nearly $20,000 in outstanding medical expenses related to plaintiffs' treatment of Johnson. On November 19, 2013, State Farm filed a motion to amend its affirmative defenses and for summary disposition. Through this motion, State Farm sought to include as an affirmative defense that plaintiffs' suit was barred because Johnson had failed to cooperate with State Farm's investigation of the claim. State Farm also argued that summary disposition of plaintiffs' claims was appropriate because Johnson's ineligibility for PIP benefits precluded plaintiffs from seeking such benefits. Additionally, State Farm asserted that the policy language at issue required Johnson to submit to an EUO as a condition precedent to the recovery of benefits. State Farm argued that Johnson's failure to cooperate made it impossible to establish whether a loss occurred or whether it was first in priority to provide no-fault coverage to Johnson. State Farm, therefore, reasoned that summary disposition was appropriate pursuant to MCR 2.116(C)(10). In response, plaintiffs argued that because EUO provisions in insurance contracts may not act as a condition precedent to the recovery of PIP benefits, State Farm was not entitled to summary disposition.

The district court denied State Farm's motion to amend its affirmative defenses and for summary disposition. The court found that State Farm had provided no legal authority to warrant an amendment to the affirmative defenses. With respect to the summary disposition motion, the court held that Johnson's actions did not preclude a healthcare provider's claim because a healthcare provider has a right to a separate cause of action.

On January 30, 2014, State Farm filed a motion for reconsideration of the district court's order denying leave to amend its affirmative defenses. In this motion, State Farm argued that healthcare providers lacked standing to pursue a claim for PIP benefits, asserting that only the injured party could pursue such a claim. On February 4, 2014, the district court denied State Farm's motion for reconsideration.

The circuit court denied State Farm's application for leave to appeal, finding that State Farm had failed to show that it would suffer substantial harm by awaiting final judgment. This Court thereafter granted leave to appeal.

II

In both appeals, State Farm argues that the lower courts erred in denying its motions for summary disposition. We review de novo a trial court's decision on a motion for summary disposition," *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013), as well as a circuit court's affirmance of a district court's decision on a motion for summary disposition, *First of Am Bank v Thompson*, 217 Mich App 581, 583; 552 NW2d 516 (1996). When reviewing a motion for summary disposition pursuant to MCR 2.116(C)(10), this Court must consider, in the light most favorable to the party opposing the motion, "the 'affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties.' " *Calhoun Co v Blue Cross Blue Shield Michigan*, 297 Mich App 1, 11-12; 824 NW2d 202 (2012), quoting MCR 2.116(G)(5). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Dillard v Schlussel*, 308 Mich App 429, ___; ___ NW2d ___ (2014); slip op at 8-9 (quotation marks and citation omitted). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party," *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008), or "when the evidence submitted 'might permit inferences contrary to the facts asserted by the movant,' " *Dillard*, 308 Mich App at ___; slip op at 9, quoting *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 360; 320 NW2d 836 (1982).

A

State Farm first argues in Docket No. 322317 that healthcare providers do not have standing under the no-fault act to bring an action against an insurer to obtain no-fault PIP benefits. We disagree.

This issue is not properly preserved because State Farm raised this argument for the first time in a motion for reconsideration. *Vushaj v Farm Bureau Gen Ins Co of Michigan*, 284 Mich App 513, 519; 773 NW2d 758 (2009). However, we will review this issue because it is an issue of law and all of the relevant facts are available. *Id*.

Whether a party has standing to bring an action is a question of law reviewed de novo on appeal. *Gyarmati v Bielfield*, 245 Mich App 602, 604; 629 NW2d 93 (2001).

> [A] litigant has standing whenever there is a legal cause of action. . . . Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or *right*, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large *or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010) (emphasis added).]

This Court has frequently restated the following principles of statutory construction:

-4-

The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature in enacting a provision. Statutory language should be construed reasonably, keeping in mind the purpose of the statute. The first criterion in determining intent is the specific language of the statute. If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. However, if reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate. [*CG Automation & Fixture, Inc v Autoform, Inc*, 291 Mich App 333, 338; 804 NW2d 781 (2011) (quotation marks and citation omitted).]

Courts should give effect to every word and phrase in a statute and avoid an interpretation that renders any part of a statute surplusage or nugatory. *Dep't of Environmental Quality v Worth Twp*, 491 Mich 227, 238; 814 NW2d 646 (2012).

In *Munson Med Ctr v Auto Club Ins Ass'n*, 218 Mich App 375, 381-381; 554 NW2d 49 (1996), this Court previously recognized that medical service providers have the "*right* to be paid for the injureds' no-fault medical expenses . . . pursuant to MCL 500.3105, 500.3107, and 500.3157 . . . ." (Emphasis added.)[2] Similarly, a healthcare provider's right to reimbursement for medical expenses in a first-party no-fault action is evident in the statutory language of MCL 500.3112, especially when the language is considered in context with MCL 500.3105, 500.3107, and 500.3157. MCL 500.3112 states, in pertinent part, that "[p]ersonal protection insurance benefits are payable to *or for the benefit of* an injured person or, in the case of his death, to or for

---

[2] MCL 500.3105(1) provides, "Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." In relevant part, the previous and current version of MCL 500.3107 states:

(1) Except as provided in subsection (2), personal protection insurance benefits are payable for the following:

(a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation. . . .

Finally, MCL 500.3157 provides:

A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered. The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance.

the benefit of his dependents." MCL 500.3112 (emphasis added). "The word 'or' is a disjunctive term indicating a choice between alternatives." *Jesperson v Auto Club Ins Ass'n*, 306 Mich App 632, 643; 858 NW2d 105 (2014). Accordingly, the plain language of the statute reveals a Legislative intent to allow either the injured person *or* a party that provided benefits to an injured person to recover the payment of benefits from an insurer; the injured person is not the only party who has this right. Consistent with this construction, this Court has held that MCL 500.3112 "specifically contemplates the payment of benefits to someone other than the injured person," and recognized that "it is common practice for insurers to directly reimburse health care providers for services rendered to their insureds." *Lakeland Neurocare Ctrs v State Farm Mut Auto Ins Co,* 250 Mich App 35, 39; 645 NW2d 59 (2002). Therefore, given the text of MCL 500.3112, especially when read in conjunction with MCL 500.3105, 500.3107, and 500.3157, and this Court's previous interpretations of the language, we conclude that the statutory scheme of the no-fault act indicates that the Legislature intended to confer standing on a healthcare provider to bring a claim against an insurer in order to enforce its right to be reimbursed for medical services rendered to an injured party insured under the applicable no-fault policy. See *Lansing Sch Ed Ass'n*, 487 Mich at 372.

This conclusion is consistent with other opinions issued by this Court that have acknowledged the viability of first-party claims brought by healthcare providers.[3] Most recently, after quoting MCL 500.3105(1) and 500.3112 and summarizing the development of the case law concerning this issue, this Court expressly stated that healthcare providers may bring a direct action to recover PIP benefits in *Wyoming Chiropractic*, 308 Mich App 389, ___; ___ NW2d ___ (2014); slip op at 6, holding that "the fact that a healthcare provider is entitled to payment, as well as the fact that a healthcare provider can sue to enforce the penalty provision of the no-fault

---

[3] See, e.g., *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2015); slip op at 3 ("[I]t is . . . well-settled that a medical provider has independent standing to bring a claim against an insurer for the payment of no-fault benefits."); *Moody v Home Owners Ins Co*, 304 Mich App 415, 440; 849 NW2d 31 (2014) ("[Healthcare] providers may bring an independent cause of action against a no-fault insurer."); *Michigan Head & Spine Inst, PC v State Farm Mut Auto Ins Co*, 299 Mich App 442, 447-449, 448 n 1; 830 NW2d 781 (2013) ("We note that the language "or on behalf of" in the release is similar to the phrase 'or for the benefit of' in MCL 500.3112, which this Court has recognized creates an independent cause of action for healthcare providers." [Citation omitted]); *Lakeland*, 250 Mich App at 42 ("Plaintiff was a health care provider that had the right to, and did, submit claims for medical benefits for the benefit of defendant's insured. Plaintiff's claims were repeatedly denied, *forcing plaintiff to commence legal action against defendant that led to full recovery of the benefits.*" [Emphasis added.]); *id*. at 42-43 ("The no-fault act does not, however, accomplish its purpose or goal by sanctioning actions of no-fault insurers that include unreasonable payment delays and denials of no-fault benefits *that force the commencement of legal action by the injured person's health care provider.*" [Emphasis added.]); *Regents of Univ of Michigan v State Farm Mut Ins Co*, 250 Mich App 719, 733; 650 NW2d 129 (2002) ("Although plaintiffs[, i.e., healthcare providers who operated a hospital,] may have derivative claims, *they also have direct claims for personal protection insurance benefits.*" [Emphasis added.]).

act,[4] indicates that a healthcare provider may bring a cause of action to recover the PIP benefits under the no-fault act." *Id.* (footnote added).[5] Accordingly, in light of the statutory framework and applicable case law, State Farm's argument that the healthcare providers do not have standing to bring causes of action to recover PIP benefits is without merit.

B

Next, State Farm argues in both appeals that the healthcare providers' ability to seek no-fault PIP benefits is dependent on whether the injured party would be eligible to receive those PIP benefits. As such, State Farm contends that the trial courts erred in denying its motions for summary disposition because the medical providers' claims are barred on the basis that Jackson and Johnson were ineligible for benefits because they failed to comply with the MEs and EUOs that State Farm requested and, consequently, failed to provide reasonable proof of a compensable loss. We agree with State Farm's general statement of the law, but disagree that the medical providers' claims are barred as a matter of law at this stage of the proceedings.

A review of relevant Michigan caselaw indicates that a healthcare provider's eligibility to recover medical expenses is dependent upon the injured party's eligibility for no-fault benefits under the insurance policy. Our decision in *TBCI, PC v State Farm Mut Auto Ins Co,* 289 Mich App 39; 795 NW2d 229 (2010), is instructive. In that case, the healthcare provider brought suit seeking payment of personal protection insurance benefits under the no-fault act. *Id.* at 40. The plaintiff had provided medical treatment to Eric Afful, who was allegedly injured in a motor vehicle accident. *Id.* at 41. State Farm, however, had refused to pay Afful's claim, contending that the claims were fraudulent. *Id.* at 40. Afful filed suit against State Farm, and the jury found that Afful was not entitled to no-fault benefits on account of his fraudulent conduct. *Id.* In the provider's suit, this Court found that the provider was similarly barred from claiming no-fault benefits:

> Here, there is no serious dispute whether the judgment in the first case was a final judgment on the merits. The jury determined that Afful had submitted a fraudulent claim for benefits, and a judgment pursuant to the verdict was entered on June 3, 2008. Further, there is no question whether plaintiff's claims were, or could have been, resolved in the first lawsuit. This is because the essential evidence presented in the first case sustained dismissal of both actions. See *Eaton Co Rd Comm'rs,* 205 Mich App [371, 375; 521 NW2d 847 (1994)]. Plaintiff, by seeking coverage under the policy, is now essentially standing in the shoes of Afful. Being in such a position, there is also no question that plaintiff, although not a party to the first case, was a "privy" of Afful. "A privy of a party includes a person so identified in interest with another that he represents the same legal right.

---

[4] See *Lakeland,* 250 Mich App at 37-40.

[5] In *Wyoming Chiropractic*, this Court relied upon the following prior opinions of this Court: *Lakeland,* 250 Mich App at 36-39; *Regents of the Univ of Mich,* 250 Mich App at 731-734; and *Munson,* 218 Mich App at 378.

. . ." *Begin v Mich Bell Telephone Co*, 284 Mich App [581, 599; 773 NW2d 271 (2009)]. As noted, the jury determined that Afful submitted a fraudulent claim. The result under the plain language of the exclusion provision interpreted in the first action is that Afful and his privies were not entitled to coverage under the policy. Plaintiff is simply attempting to relitigate precisely the same issue in order to obtain coverage under the policy. The trial court properly dismissed plaintiff's suit to the extent that it found its claim was barred by res judicata. For this reason, plaintiff's claim of appeal fails. [*TBCI*, 289 Mich App at 43-44.]

Similarly, in *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420; ___ NW2d___ (2014) (Docket No. 316869); slip op at 4, this Court found that healthcare providers' claims for PIP benefits were barred by the fraudulent conduct of the named insured. Citing *TBCI, PC*, 289 Mich App at 44, this Court stated, "Because intervening plaintiffs stood in the shoes of the named insured, if plaintiff cannot recover benefits, neither can intervening plaintiffs." *Id.* at ___; slip op at 3. Accordingly, this Court concluded that "[b]ecause plaintiff's claim for PIP benefits is precluded, intervening plaintiffs' [the providers'] claim for PIP benefits is similarly barred . . . ." *Id.* at ___; slip op at 4.

In *Mich Head & Spine Institute v State Farm Mut Auto Ins Co,* 299 Mich App 442; 830 NW2d 781 (2013), this Court also acknowledged the interdependence between the claims of a healthcare provider and an injured party. In that case, the healthcare provider rendered services and accommodations to Pellumbesha Biba and brought an action against Biba's no-fault insurer, State Farm, seeking to recover payment for the benefits that it had rendered. *Id.* at 445-446. In exchange for $35,000 and in settlement of ongoing litigation with State Farm, Biba executed a contract that released State Farm from liability for no-fault benefits incurred to date or which might be incurred in the future. *Id.* at 444. Six months after signing the release, Biba began treatment with the plaintiff, Michigan Head & Spine. *Id.* at 445. In reliance on the release, State Farm refused to pay Michigan Head & Spine for its treatment of Biba. *Id.* at 445. State Farm appealed the district court's order granting summary disposition in favor of Michigan Head & Spine in order to determine "whether an insured's release bars a healthcare provider's claim for payment for medical services rendered to the insured after the release was executed." *Id.* at 446, 448. Applying contract principles, this Court held that the plain language of the release "demonstrated that, in exchange for defendant's payment of $35,000, the parties intended to discharge defendant's liability altogether, including its liability for future medical services." *Id.* Therefore, this Court held that summary disposition should have been granted in the defendant's favor. *Id.* at 450.[6]

---

[6] Notably, the services and billings at issue in *Mich Head & Spine* were incurred and submitted respectively *after* the insured entered into a release with the insurer. That case did not address the situation where an insured receives medical services and the medical provider notifies the insurer of its right to payment prior to the execution of a release by the insured, a situation that raises particular issues under the text of MCL 500.3112. See *Covenant Med Ctr*, ___ Mich App at ___; slip op at 2-3 (holding that the insured's liability to a medical provider was not discharged under such circumstances).

-8-

Additionally, in *Detroit Med Ctr v Progressive Mich Ins Co*, 302 Mich App 392, 399; 838 NW2d 910 (2013), this Court implicitly recognized that a healthcare provider's claim is dependent on the injured party's entitlement to benefits under a no-fault insurance policy, although it did not directly rule on the issue. The case was initiated by the plaintiff healthcare provider that treated the injuries of a motorcyclist who was insured by the defendant insurance company. *Id*. at 394. The trial court entered judgment in favor of the healthcare provider based on its conclusion that the motor vehicle associated with the incident was sufficiently involved in the accident for the plaintiff healthcare provider to recover no-fault benefits. *Id*. at 394. This Court held that summary disposition should have been granted in favor of the defendant insurance company because the *motorcyclist* was not entitled to personal protection insurance benefits pursuant to the no-fault act under the facts of the case. *Id*. at 399.[7] Thus, applying the foregoing principles, we conclude that a healthcare provider's ability to recover an injured party's medical expenses under the no-fault act is dependent upon the insured's eligibility for such benefits.[8] Accordingly, resolution of the ultimate issue in this case turns on whether the injured insureds, Jackson and Johnson, would have been entitled to recover first-party PIP benefits under the insurance policies. For the reasons stated below, we conclude that the district courts did not err in finding that genuine issues of material fact precluded summary disposition.

State Farm argues that the district courts' focus on whether Jackson and Johnson were involved in the accidents or sustained injures related thereto was misplaced. Instead, according to State Farm, the courts should have focused on the undisputed fact that the injured parties failed to submit to the requested MEs and EUOs. State Farm contends that this failure to cooperate conclusively established that the injured parties were prohibited from seeking no-fault coverage. We disagree.

---

[7] This Court's decision in *Moody*, 304 Mich App at 440, stating that the providers' claims were "completely derivative of and dependent on Moody[] having a valid claim of no-fault benefits against [the insurer]," is also consistent with the cases discussed above.

[8] Although the specific issue is not before us for decision, in our view, whether an injured party is *eligible* for benefits is a different question than whether an injured party may recover benefits when that injured party fails to timely file a cause of action to recover benefits that the injured party is eligible to receive. Thus, were the question before us, we would conclude that an injured party's failure to timely bring suit would not in and of itself bar a provider's timely action against the insured. An injured party may be *eligible* for benefits under MCL 500.3105(1) even though his or her claim is barred by the one-year statute of limitations under MCL 500.3145(1). In such a case, a provider's claim, which is dependent on the injured party's eligibility, would be unaffected. See *Moody*, 304 Mich App at 440. It is well-settled that each claim in an action is subject to its own applicable statute of limitations and the untimeliness of one claim does not, without more, bar another timely-filed claim. Moreover, if the provider's claim is timely filed, the purposes of statutes of limitations—to encourage plaintiffs to diligently pursue claims and to protect defendants from having to defend against stale and fraudulent claim—are satisfied. See *Wright v Rinaldo*, 279 Mich App 526, 533; 761 NW2d 114 (2008).

In order to resolve this issue, a brief review of the statutes and caselaw addressing MEs and EUOs is warranted. Beginning with MEs, MCL 500.3151 provides that "when the mental or physical condition of a person is material to a claim that has been made for past or future personal protection insurance benefits, the person shall submit to mental or physical examination by physicians." MCL 500.3153 addresses the repercussions that may result if a claimant refuses to comply with a request to submit to an examination. The statute permits a court to enter orders regarding the refusal that include, but are not limited to:

> (a) An order that the mental or physical condition of the disobedient person shall be taken to be established for the purposes of the claim in accordance with the contention of the party obtaining the order.

> (b) An order refusing to allow the disobedient person to support or oppose designated claims or defenses, or prohibiting him from introducing evidence of mental or physical condition.

> (c) An order rendering judgment by default against the disobedient person as to his entire claim or a designated part of it.

> (d) An order requiring the disobedient person to reimburse the insurer for reasonable attorneys' fees and expenses incurred in defense against the claim.

> (e) An order requiring delivery of a report, in conformity with section 3152, on such terms as are just, and if a physician fails or refuses to make the report a court may exclude his testimony if offered at trial. [MCL 500.3153.]

Thus, pursuant to MCL 500.3153, a court is authorized to dismiss an insured's claim for failure to submit to an examination. *Muci v State Farm Mut Auto Ins Co*, 478 Mich 178, 189; 732 NW2d 88 (2007). However, no such order was entered in either case.

This Court's decision in *Roberts v Farmers Ins Exch,* 275 Mich App 58, 69; 737 NW2d 332 (2007), is instructive. *Roberts* indicates that a suspension of benefits is proper if a claimant repeatedly fails to comply with his or her statutory duty to submit to MEs. In *Roberts,* after the insured, Brittany Underwood, repeatedly missed scheduled MEs and failed to pay cancellation fees, the insurer discontinued first-party no-fault benefits. *Id*. at 61. This Court, in reviewing the propriety of the insurer's actions, held:

> Underwood repeatedly failed or refused to attend the physical and psychological IMEs. Underwood therefore breached her statutory duty to "submit to mental or physical examination by physicians." MCL 500.3151. *Farmers did not conclude that because of Underwood's breach, benefits were irrevocably denied; rather, it merely suspended those benefits until Underwood (1) paid the $1,000 cancellation fee and (2) submitted to a psychological IME.* Because Underwood had breached her statutory duty to submit to IMEs, Farmers had a legitimate statutory question, namely, whether a claimant, upon breach of her statutory duty to submit to IMEs, remains entitled to continuing PIP benefits. The statute provides no penalty for a claimant's breach of his or her duty to submit to IMEs; therefore, Farmers raises a legitimate statutory question regarding the

appropriate consequence of Underwood's breach of her statutory duty. Because Farmers had a legitimate question of statutory construction, its suspension of benefits to Underwood was reasonable. *McCarthy*[ *v Auto Club Ins Ass'n*, 208 Mich App 97, 103; 527 NW2d 524]. *We hold that where a claimant repeatedly breaches his or her statutory duty to submit to IMEs, an insurer may properly suspend benefits pending completion of any requisite IME. Otherwise, an insured could breach with impunity his or her duty to submit to IMEs, and the insurer would have no way of investigating whether the injury claims were legitimate.*

In addition to the statutory duty to submit to IMEs, Farmers' no-fault policy imposes on a person claiming coverage under the policy a duty to "[s]ubmit to physical examinations at our expense by doctors we select as often as we may reasonably require." The policy does not articulate the remedy for breach of this duty. The general rule is that a remedy for breach of contract should make the nonbreaching party whole or "place the nonbreaching party in as good a position as if the contract had been fully performed." *Corl v Huron Castings, Inc*, 450 Mich 620, 625-626; 544 NW2d 278 (1996). Allowing Farmers to suspend benefits places Farmers in as good a position as if Underwood had submitted to a neuropsychological IME because it puts Farmers in the same position as it would be had the IME shown that Underwood lacked a brain injury caused by the accident. Whether viewed as a remedy for breach of the statutory duty to submit to IMEs or as a remedy for breach of a contractual duty to submit to IMEs, the proper remedy is for the insurer to suspend performance of its duties. [*Roberts*, 275 Mich App at 68-69 (emphasis added).]

Thus, pursuant to *Roberts*, State Farm may reasonably suspend claims by the injured parties due to a failure to submit to MEs, and a suspension of benefits is not an "irrevocable denial" of benefits; the eligibility for PIP benefits is simply suspended until compliance with the ME. Likewise, we conclude that evidence that an injured party failed to submit to an ME that later results in a suspension of the claim is not tantamount to dispositive evidence that an insured is *not entitled* to PIP benefits.

With regard to the effect of an injured party's failure to submit to an EUO, the Supreme Court's decision in *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588; 648 NW2d 591 (2002), is instructive. In *Cruz*, the Court held that EUO provisions may be included in no-fault polices, but they are only enforceable to the extent that they do not conflict with the statutory requirements of the no-fault act. *Id.* at 590. Thus, a policy provision requiring a claimant to submit to an EUO "designed only to ensure that the insurer is provided with the information relating to proof of the fact and of the amount of the loss sustained . . . would not run afoul of the statute." *Id.* at 598. However, "a no-fault policy that would allow the insurer to avoid its obligation to make prompt payment upon the mere failure to comply with an EUO would run afoul of the statute and accordingly be invalid." *Id.*

State Farm contends, *inter alia*, that the injured parties are ineligible for PIP benefits because they failed to submit to EUOs. However, taken to its logical extension, State Farm's argument, that the failure to submit to an EUO is alone sufficient to render the insured ineligible for PIP benefits, would cause compliance with EUO provisions to effectively operate as a

condition precedent to State Farm's duty to pay no-fault benefits.[9] However, utilizing the compliance with EUO provisions as a condition precedent to the recovery of no fault benefits is precluded by *Cruz*, which held that an insurance company and its insured are not permitted to contract in a manner that vitiates the insurance company's "duty to pay benefits in a timely fashion as required by the statute. Once 'reasonable proof of the fact and of the amount of loss sustained' [is] received by [the insurer], it [must] pay benefits or be subject to the penalties." *Id*. at 600. Accordingly, we find that the failure to submit to an EUO does not establish, as a matter of law, that an injured party is not entitled to no-fault benefits.

Here, it is apparent that an "irrevocable denial" of benefits had not been issued by State Farm in either case: State Farm had only suspended Jackson's claim for benefits due to its inability to determine whether Jackson was eligible for outstanding or future benefits, and there is no indication that State Farm took any action following Johnson's failure to appear at the EUOs. Therefore, we conclude that the injured parties' failure to submit to the MEs and EUOs requested by State Farm did not demonstrate that there is no genuine issue of material fact as to whether plaintiffs, as the injured parties' healthcare providers, were entitled to no-fault benefits as a matter of law, because the injured parties' failure to comply does not conclusively establish the ineligibility of the injured parties and plaintiffs' related inability to recover payment for PIP benefits from State Farm. State Farm remained statutorily obligated to pay benefits in a timely manner if the insured parties complied with the requirements of the no-fault act, which includes submitting to an ME if requested,[10] demonstrating that they are eligible for benefits under the policy,[11] and providing "reasonable proof of the fact and of the amount of loss sustained."[12] Viewing the evidence in the light most favorable to the parties opposing the motions for summary disposition, *Calhoun Co*, 297 Mich App at 11-12, the medical records proffered by plaintiffs in the district courts established that there were genuine issues of material fact regarding whether the injured parties' claims were causally connected to accidental bodily injuries arising out of an automobile accident, which involved the use of a motor vehicle.

---

[9] As State Farm argues in Docket No. 322317, it does appear that the *purpose* of invoking the EUO provision was to ensure that it was provided with information regarding Johnson's eligibility for PIP benefits under the insurance policy. However, as we explain below, we find that the injured party's failure to submit to an EUO or provide other documentation does not establish, as a matter of law, that the injured party is *not entitled* to PIP benefits, such that a healthcare provider is not entitled to receive payment for medical services as a matter of law.

[10] MCL 500.3151.

[11] See *Douglas v Allstate Ins Co*, 492 Mich 241, 257; 821 NW2d 472 (2012) (stating that MCL 500.3105(1) includes two threshold requirements that a plaintiff must fulfill in order to establish entitlement to PIP benefits: (1) "the claimed benefits are causally connected to the accidental bodily injury arising out of an automobile accident," and (2) the "injuries [arose] out of or [were] caused by the ownership, operation, maintenance or use of a motor vehicle.").

[12] See MCL 500.3142 ("Personal protection insurance benefits are overdue if not paid within 30 days *after an insurer receives reasonable proof of the fact and of the amount of loss sustained*." [Emphasis added.]); *Cruz*, 466 Mich at 600.

Likewise, the medical records provided by plaintiffs established a genuine issue of material fact regarding whether plaintiffs had proffered reasonable proof of the fact and of the amount of loss sustained, such that State Farm was required to pay PIP benefits to plaintiffs. Therefore, because "reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party," *Allison*, 481 Mich at 425, and "the evidence submitted 'might permit inferences contrary to the facts asserted by the movant,' " *Dillard*, 308 Mich App at ___; slip op at 9 (citation omitted), the district courts did not err in denying State Farm's motions for summary disposition under MCR 2.116(C)(10).

Our conclusion here is consistent with the public policy goals of the no-fault act. As discussed by this Court in *Wyoming Chiropractic*, 303 Mich App at ____; slip op at 8,

> [t]he goal of the no-fault act is " 'to provide victims of motor vehicle accidents with *assured, adequate, and prompt* reparation for certain economic losses.' " The no-fault act was designed to remedy " 'long delays, inequitable payment structure, and high legal costs' " in the tort system. Allowing a healthcare provider to bring a cause of action expedites the payment process to the healthcare provider when payment is in dispute. [Emphasis added; footnotes omitted.]

See also *Shavers v Kelley*, 402 Mich 554, 621-623; 267 NW2d 72 (1978) (describing operational deficiencies in the previous tort system and the corresponding changes in the no-fault personal injury protection system). However, "[i]t is clear that the Legislature did not intend for no-fault insurers to pay all claims submitted without reviewing the claims for lack of coverage, excessiveness, or fraud." *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 377- 378; 670 NW2d 569, 577 (2003) (quotation marks and citation omitted). Although it is evident that the no-fault act balances injured parties' interests in assured payment with insurance providers' interests in ensuring that they do not pay ineligible, excessive, or fraudulent claims, the statutory scheme and public policy goals of the act demonstrate a significant emphasis on assured, adequate, and prompt reparation for the victims of motor vehicle accidents and, correspondingly, those who may claim benefits "for the benefit of an injured person," i.e., healthcare providers. See MCL 500.3112. As recognized in *Wyoming Chiropractic*, a healthcare provider's suit for the payment of PIP benefits when payment is in dispute, even when an injured party has failed to comply with MEs or EUOs, expedites the payment process, and increases the probability of assured payment, for the healthcare provider. Likewise, given that plaintiffs are still required to establish the injured parties' eligibility for benefits in order to receive payment,[13] State Farm's interest in preventing payment for claims barred by lack of coverage, excessiveness, or fraud is still preserved. See *Advocacy Org*, 257 Mich App at 377- 378. Therefore, for the reasons stated above, we hold that the injured parties'

---

[13] Given that State Farm properly suspended benefits in Docket No. 320288 because Jackson failed to submit to an ME, plaintiffs, whose claim is derivative and dependent upon Jackson's eligibility for benefits, would still be subject to the suspension of benefits until Jackson complied with the investigation. See *Moody*, 304 Mich App at 440.

failure to comply with the MEs and EUOs did not establish that State Farm was entitled to summary disposition as a matter of law.

III

Finally, State Farm argues in Docket No. 322317 that the district court abused its discretion when it failed to grant its request for leave to amend its affirmative defenses to include an allegation that Johnson's ineligibility for no-fault benefits barred plaintiffs' claims. We agree.

This Court reviews for an abuse of discretion a trial court's ruling on a motion for leave to amend a pleading. *Titan Ins Co v North Pointe Ins Co,* 270 Mich App 339, 346; 715 NW2d 324 (2006). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Brown v Home-Owners Ins Co,* 298 Mich App 678, 690; 828 NW2d 400 (2012) (quotation marks and citation omitted).

Pursuant to MCR 2.111(F)(3)(b), a party must state the facts constituting "a defense that by reason of other affirmative matter seeks to avoid the legal effect of or defeat the claim of the opposing party, in whole or in part[.]" MCR 2.111(F)(3) requires that a party state its affirmative defenses in its responsive pleading, either as originally filed or as amended pursuant to MCR 2.118. Further, under MCR 2.118(A)(2), leave to amend pleadings "shall be freely given when justice so requires."

> A motion to amend ordinarily should be granted, and should be denied only for the following particularized reasons:
>
> > [1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [and 5] futility. . . . [*Weymers v Khera,* 454 Mich 639, 658; 563 NW2d 647 (1997) (quotation marks and citation omitted).]

In this case, the trial court denied State Farm's motion to amend on the basis that it failed to make a legal argument or cite any caselaw indicating that justice required an amendment of State Farm's affirmative defenses. As such, the trial court's reasoning was equivalent to a finding that the amendment would be futile. "An amendment is futile where, ignoring the substantive merits of the claim, it is legally insufficient on its face." *Gonyea v Motor Parts Fed Credit Union,* 192 Mich App 74, 78; 480 NW2d 297 (1991). While futility may warrant denying a motion to amend a pleading, *Weymers,* 454 Mich at 658, in this case, the proposed amendment was not necessarily futile. As we explained in Part II.B, a healthcare provider's ability to recover medical expenses under the no-fault act depends on whether the injured party is eligible for such no-fault benefits. Thus, if it were established that Johnson is not eligible for no-fault benefits, the provider's cause of action would be precluded. In its brief in support of its motion to amend its affirmative defenses and for summary disposition, State Farm cited authority in support of its position that the healthcare providers stand in the shoes of Johnson, such that the healthcare providers are no more entitled to recover benefits than Johnson. Therefore, to the extent that State Farm's proposed amendment included an allegation that Johnson's ineligibility

-14-

for no-fault benefits barred plaintiff's claims, State Farm should have been given leave to amend its answer. Such an affirmative defense, if proven, would, in fact, defeat plaintiffs' claims. Therefore, the court abused its discretion when it failed to permit the proposed amendment to State Farm's affirmative defenses.

We affirm the district courts' orders denying State Farm's motions for summary disposition in Docket Nos. 320288 and 322317, reverse the order denying State Farm's motion to amend its affirmative defenses in Docket No. 322317, and remand for further proceedings consistent with this opinion in both appeals. As the prevailing party in Docket No. 320288, plaintiff may tax costs pursuant to MCR 7.219. No taxable costs in Docket No. 322317, none of the parties having prevailed in full. We do not retain jurisdiction.

/s/ Kurtis T. Wilder
/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause

-15-