# STATE OF MICHIGAN

# COURT OF APPEALS

THE DETROIT MEDICAL CENTER,

Plaintiff-Appellant,

v

MICHIGAN PROPERTY & CASUALTY
GUARANTY ASSOCIATION,

Defendant-Appellee,

and

MICHIGAN ASSIGNED CLAIMS FACILITY,

Defendant.

UNPUBLISHED
July 26, 2016

No. 326793
Wayne Circuit Court
LC No. 13-015970-NF

Before: WILDER, P.J., and MURPHY and O'CONNELL, JJ.

PER CURIAM.

Plaintiff, The Detroit Medical Center (the medical center), appeals as of right the trial court's order granting summary disposition in favor of defendant Michigan Property & Casualty Guaranty Association (the association). We reverse and remand for further proceedings.

## I. FACTUAL OVERVIEW

The medical center initiated this action under the no-fault act, MCL 500.3101 *et seq.*, to recover expenses incurred by the medical center in providing care and treatment for Danielle Pinkney, who was injured in a motor vehicle accident in June 2010 while operating, without a license, a Jeep Liberty titled solely in the name of her fiancée, James Talison; the vehicle was "totaled" in the accident. In pre-litigation "examinations under oath" (EUOs) conducted in September 2010 by American Fellowship Mutual Insurance Company (American Fellowship) – Talison's no-fault insurer of the Jeep – Pinkney and Talison unequivocally and repeatedly expressed that Pinkney had been operating Talison's vehicle at the time of the accident absent his permission

-1-

while he slept, that she had never previously been given permission by Talison to drive the Jeep, and that Pinkney did not drive Talison's vehicles.[1]

Subsequently, in 2011 depositions taken during litigation, Pinkney and Talison testified that they had both lied in their respective EUOs after being informed by an attorney that the balance owing on the six-year loan used to purchase the Jeep a few months before the crash would only be paid off by American Fellowship if the unlicensed Pinkney had lacked permission to drive Talison's vehicle. They directly, apologetically, and repeatedly acknowledged giving fabricated answers in the EUOs, emphasizing the motivation behind their lies.[2] In their depositions, Pinkney and Talison now both adamantly insisted that Pinkney had contributed $4,000 of the $5,000 down payment on the Jeep, that she had her own personal set of keys to the vehicle, that she drove the Jeep nearly every day, that she had Talison's permission to drive the vehicle whenever she wished, that she helped fund the monthly installment payments for the Jeep and the insurance premiums, and that Pinkney was operating the vehicle with Talison's permission when the accident occurred. Pinkney and Talison recognized that if American Fellowship did not pay the medical center's bills stemming from Pinkney's medical care following the accident, Pinkney would be personally responsible for paying the debt.[3]

This case presents the question whether a genuine issue of material fact exists regarding whether the medical center is entitled to recover personal protection insurance benefits, commonly referred to as PIP benefits, where the EUOs suggested that Pinkney had used Talison's Jeep after having taken it unlawfully, MCL 500.3113(a),[4] but where the subsequent deposition testimony reflected the contrary.

---

[1] Pinkney and Talison appeared for the EUOs without counsel. Also, Pinkney was not a named insured in the American Fellowship policy.

[2] Pinkney also explained that she had felt intense pressure from Talison to inaccurately claim during her EUO that she had driven the Jeep without Talison's permission.

[3] Talison testified that he had previously been convicted of attempted insurance fraud in the early 1980s. The record is not entirely clear regarding whether American Fellowship paid for the damages to the Jeep or the balance on the outstanding loan, but it appears that a payment was made. Talison mentioned in his deposition, "And then I found out that they [American Fellowship] were going to pay for it, but then it just took so long."

[4] At the time of the accident, MCL 500.3113(a) provided:

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

> (a) The person was using a motor vehicle . . . which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle.The provision was subsequently amended pursuant to 2014 PA 489, but it still generally precludes the recovery of PIP benefits by a person who operated a vehicle "that was taken unlawfully[.]" The construction of MCL 500.3113(a) is not at issue in this case.

-2-

## II. PROCEDURAL HISTORY

Although the record does not provide much clarity, it appears that in June 2011, the medical center commenced an action for no-fault PIP benefits against American Fellowship. The litigation depositions of Pinkney and Talison referred to above were taken in July 2011 during the suit against American Fellowship. However, American Fellowship apparently filed for bankruptcy protection, resulting in an automatic stay, and that litigation was left in limbo absent resolution. On December 12, 2013, the medical center filed the complaint in the instant suit. In the complaint, the medical center indicated that American Fellowship had been the highest priority insurer and that the medical center had submitted proof-of-loss claims to American Fellowship in the amount of $65,211, consisting of reasonable and customary charges relative to providing medical products and services to Pinkney for purposes of her care, recovery, and rehabilitation.[5] The complaint alleged that American Fellowship was later declared insolvent and that under the Michigan Property and Casualty Guaranty Association Act (MPCGAA), MCL 500.7901 *et seq.*, the association assumed American Fellowship's obligation to pay no-fault benefits to or on behalf of Pinkney.[6] Aside from the association, the medical center also named as a defendant the Michigan Assigned Claims Facility (MACF), see MCL 500.3171 *et seq.*[7] The medical center sought a judgment declaring that the association and/or the MACF (or its insurer assignee) were liable for the payment of PIP benefits.

In January 2015, the association filed a motion for summary disposition under MCR 2.116(C)(10). The association summed up its argument as follows:

> In the present action, the purpose of summary disposition would not be well served by allowing Ms. Pinkney and Mr. Talison to create factual issues regarding Ms. Pinkney's unlawful taking of the Jeep in a subsequent deposition after they admitted in their initial EUO that she had no such permission.

---

[5] In a response to a request for admission, the medical center admitted that American Fellowship had sent a letter to the medical center in February 2011 denying its request for the payment of PIP benefits on the basis of the unlawful-taking provision in MCL 500.3113(a). This precipitated the June 2011 lawsuit against American Fellowship that was later halted by the bankruptcy stay.

[6] Under the MPCGAA, the association "has a duty to pay certain obligations of insolvent insurers that come within the act's definition of covered claims." *Oakland Co Bd of Co Rd Comm'rs v Mich Prop & Cas Guaranty Ass'n*, 456 Mich 590, 594; 575 NW2d 751 (1998). "The act is designed to protect persons from potentially catastrophic loss who have a right to rely on the existence of an insurance policy, the insureds and persons with claims against the insured." *Id.* at 601 (citation omitted).

[7] MCL 500.3172(1) provides in part:

> A person entitled to claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in this state may obtain personal protection insurance benefits through the assigned claims plan if . . . the only identifiable personal protection insurance applicable to the injury is, because of financial inability of 1 or more insurers to fulfill their obligations, inadequate to provide benefits up to the maximum prescribed.

Mr. Talison's and Ms. Pinkney's EUO testimony is clear, intelligent and unequivocal. Their EUO testimony establishes that Mr. Talison never let Ms. Pinkney use the Jeep and that Mr. Talison did not give Ms. Pinkney any permission to use the Jeep at the time of the accident. Further, both admit that she was an unlicensed driver at the time of the accident. Because the Jeep was unlawfully taken by Ms. Pinkney, summary disposition is appropriate based on MCL [5]00.3113(a).

[T]he subsequent deposition testimony of Ms. Pinkney and Mr. Talison in which they claim to have "lied" in their initial EUO is not an appropriate basis for creating questions of fact.[8]

In February 2015, the MACF filed its own motion for summary disposition, raising the same arguments as the association, as well as other arguments that are not pertinent to his appeal.

The medical center responded by arguing that the deposition testimony of Pinkney and Talison, when viewed in conjunction with the EUOs, minimally created an issue of fact regarding whether Pinkney had permission to drive the Jeep, i.e., whether she had unlawfully taken the vehicle for purposes of MCL 500.3113(a). The medical center maintained that Pinkney's and Talison's recanted EUOs were not definitively controlling, considering that the two had given valid and logical explanations in their depositions as to why they had lied in their EUOs. The medical center additionally submitted and relied on affidavits from three of Pinkney and Talison's friends who averred that they had personal knowledge that around the timeframe of the accident, Pinkney regularly drove the Jeep, sometimes with Talison in the vehicle, and that based on their observations, Pinkney drove the vehicle whenever she wished. All three affiants averred that they saw Pinkney and Talison leave a party earlier on the night of the accident and that Pinkney drove the Jeep, with an inebriated Talison riding along as a passenger in the vehicle. Finally, the medical center maintained that to the extent that the association was arguing that Pinkney's lack of a driver's license in and of itself implicated MCL 500.3113(a), the argument lacked merit because the caselaw reflected that MCL 500.3113(a) concerns an unlawful *taking* of a vehicle, not the unlawful operation or use of a vehicle.

The trial court granted the motions for summary disposition filed by the association and the MACF, ruling that a factual issue cannot be created by deposition testimony which asserts that prior sworn testimony was false. The trial court did not speak to the affidavits from Pinkney and Talison's friends. Separate orders of summary dismissal were entered with respect to the association and the MACF, and the medical center appeals as of right only the order granting summary disposition to the association.

---

[8] We note that the medical center did not argue below, nor contends on appeal, that the two EUOs, in and of themselves, were insufficient to trigger the bar to recovering PIP benefits under MCL 500.3113(a); the medical center evidently accepts the association's view that the EUOs evidence an unlawful taking of the Jeep. See *Rambin v Allstate Ins Co*, 495 Mich 316, 319, 332; 852 NW2d 34 (2014) (a person injured while driving a car that was taken contrary to the express prohibition of the vehicle's owner cannot recover PIP benefits under MCL 500.3113[a]; and a person who knowingly takes and uses a vehicle absent authority from the owner but with no intent to steal commits joyriding in violation of MCL 750.414, which also precludes recovery of PIP benefits under MCL 500.3113[a]).

-4-

III.  ANALYSIS

A.  STANDARD OF REVIEW AND PRINCIPLES GOVERNING MCR 2.116(C)(10)

This Court reviews de novo a trial court's decision on a motion for summary disposition, *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011), as well as questions of law in general, *Oakland Co Bd of Co Rd Comm'rs v Mich Prop & Cas Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998).  With respect to a motion for summary disposition brought pursuant to MCR 2.116(C)(10), this Court in *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), observed:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

B.  PERTINENT UNDERLYING LEGAL PRINCIPLES

In *Chiropractors Rehab Group, PC v State Farm Mut Auto Ins Co,* 313 Mich App 113, __; __ NW2d __ (2015); slip op at 6, this Court recently held:

> [G]iven the text of MCL 500.3112, especially when read in conjunction with MCL 500.3105, 500.3107, and 500.3157, and this Court's previous interpretations of the language, we conclude that the statutory scheme of the no-fault act indicates that the Legislature intended to confer standing on a healthcare provider to bring a claim against an insurer in order to enforce its right to be reimbursed for medical services rendered to an injured party insured under the applicable no-fault policy.[9]

Citing numerous supporting opinions, the *Chiropractors Rehab* panel further concluded "that a healthcare provider's ability to recover an injured party's medical expenses under the no-

---

[9] We note that in an order granting leave to appeal entered by our Supreme Court in *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co,* __ Mich __; __ NW2d __, issued May 27, 2016 (Docket No. 152758), the Court directed the parties to brief, in part, "whether a healthcare provider has an independent or derivative claim against a no-fault insurer for no-fault benefits."

fault act is dependent upon the insured's eligibility for such benefits." *Id.* at __; slip op at 9. Accordingly, whether the medical center is entitled to recover PIP benefits as reimbursement for costs associated with providing medical services, care, and treatment for Pinkney is dependent on whether Pinkney would be eligible for PIP benefits.

## C.  DISCUSSION

The central issue in this case as presented by the parties revolves around a principle that this Court alluded to many years ago in *Gamet v Jenks*, 38 Mich App 719; 197 NW2d 160 (1972).  In *Gamet*, the plaintiff was struck by a vehicle while walking across a street, and his complaint alleged that another driver, one of the defendants, had waived to the plaintiff, purportedly signaling that it was clear for the plaintiff to cross the street in the area where he was then hit.  However, in his deposition, the plaintiff testified that he read the defendant's hand signal as meaning that he could cross in front of the defendant's truck and up to a lane dividing line, but no further and not into the lane of traffic where the plaintiff was eventually struck by another vehicle.  In a subsequent affidavit, the plaintiff averred, consistent with his complaint, that he had relied on the defendant's hand signal in proceeding into the lane of traffic where he was hit.  The trial court granted the defendant's motion for summary disposition, rejecting the contradictory affidavit supplied by the plaintiff.  *Id.* at 721-722, 725.  On appeal, this Court indicated that although it would typically be error to disregard the plaintiff's affidavit in the context of deciding a motion for summary disposition brought under the precursor to MCR 2.116(C)(10), the rebutting affidavit was "insufficient for consideration."  *Id.* at 725-726.  The *Gamet* panel explained its conclusion as follows:

> As a result of his own deposition testimony, plaintiff's ability to present a case was challenged. His affidavit merely restated his pleadings. Deposition testimony damaging to a party's case will not always result in summary judgment. However, when a party makes statements of fact in a "clear, intelligent, unequivocal" manner, they should be considered as conclusively binding against him in the absence of any explanation or modification, or of a showing of mistake or improvidence. The purpose of GCR 1963, 117 is to allow the trial judge to determine whether a factual issue exists. This purpose is not well served by allowing parties to create factual issues by merely asserting the contrary in an affidavit after giving damaging testimony in a deposition.

> "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."

> [Had] plaintiff offered any reason for the contradiction we would be constrained to reverse. We read his affidavit as a general allegation without explanation.  [Citations omitted; see also *Dykes v William Beaumont Hosp*, 246 Mich App 471, 480-481; 633 NW2d 440 (2001) (quoting this passage from *Gamet* and citing a litany of cases that have recognized the principle espoused in *Gamet*).]

In *Hazelton v Lustig*, 164 Mich App 164, 168; 416 NW2d 373 (1987), this Court explained that the holding in *Gamet* was "premised upon an underlying policy to preclude a party from contriving factual issues by the simple expedient of completing an affidavit when that party's

unfavorable deposition testimony has already indicated that the assertion in the affidavit is likely to be vexatious and ill-founded." For purposes of this opinion and ease of reference, we shall refer to the principle enunciated in *Gamet* as the "*Gamet* rule." The *Gamet* rule is, effectively, an evidentiary rule precluding substantive consideration of certain affidavits, or a rule giving them no weight, in the context of deciding a motion for summary disposition relative to the question of whether a genuine issue of material fact exists in a given case.[10]

Here, the procedural posture and circumstances of this case do not call for the invocation or imposition of the *Gamet* rule. First, assuming an analogy between a deposition and a pre-litigation EUO for purposes of the *Gamet* rule,[11] the medical center is not relying on subsequent and expedient *affidavits* in which Pinkney and Talison simply set forth averments contradicting their EUOs. Rather, Pinkney and Talison contradicted their EUOs in full blown depositions, where the attorneys were able to extensively explore all factual aspects concerning and surrounding the Jeep, permission to drive the Jeep, and the prior EUOs; such exploration does not occur in an affidavit. Second, under the *Gamet* rule, clear, intelligent, and unequivocal statements of fact are only conclusively binding "in the absence of *any* explanation[.]" *Gamet*, 38 Mich App at 726 (emphasis added). While the explanation for the turnaround given by Pinkney and Talison was fabrication primarily motivated by financial gain, it was nevertheless an explanation; they did not simply testify that there was permission. Further, as noted earlier, Pinkney indicated in her deposition that she was under duress during her EUO, as she was pressured by Talison to lie, thereby providing another "explanation" for the shift in her testimony.

Next, this case does not present a situation wherein a party undermines his or her own case in deposition testimony and then that same party seeks to save the case by filing a self-serving document in which he or she contradicts the damaging deposition testimony. The *Gamet* panel spoke in terms of a deposition statement being conclusively binding *against a party deponent*. *Gamet*, 38 Mich App at 726. In the instant case, Pinkney and Talison, neither of whom were a party, provided sworn testimony in their EOUs, which were conducted without the involvement or presence of the medical center, followed by the medical center's commencement of litigation and participation in discovery that entailed the nonparty depositions at issue. It would be fundamentally unfair to apply the *Gamet* rule to the medical center in that procedural posture, given that the medical center had absolutely nothing to do with the EUOs and was entitled to engage in its own discovery under MCR 2.301 *et seq.* The medical center did not contrive factual issues.[12] We fully appreciate that the medical center's entitlement to recover PIP benefits is dependent upon Pinkney's eligibility for such benefits, *Chiropractors Rehab*, 313 Mich App at __; slip op at 9, but this does

---

[10] We do note that MCR 2.116(G)(5) provides, in part, that "affidavits . . . *must be considered* by the court when [a] motion is based on subrule (C)(1)-(7) or (10)." (Emphasis added.) One could argue that the *Gamet* rule runs afoul of the court rule; however, we decline to reach that issue, which has not been presented to us.

[11] In *Thomson v State Farm Ins Co*, 232 Mich App 38, 54-55 n 9; 592 NW2d 82 (1998), this Court discussed the various distinctions between EUOs and depositions.

[12] On appeal, the medical center contends that its constitutional due process rights are violated if the EUOs are deemed controlling and it is not permitted to introduce its own evidence in support of its lawsuit. We decline to couch our ruling in constitutional terms and simply hold that the *Gamet* rule is inapplicable in this case.

-7-

not mean that the evidence available to the medical center to show that Pinkney was so eligible should be limited because of Pinkney's supposed lies. The *Gamet* rule is plainly intended to prevent gamesmanship; however, the medical center did not participate in any gamesmanship.

The determination of Pinkney's eligibility for PIP benefits is dependent on evidence pertaining to permission to drive the Jeep, MCL 500.3113(a), and, generally speaking, the evidence that can be considered in any given case is always subject to the particular circumstances, context, and facets of the case, such that evidence admissible in one suit may not necessarily be admissible in another action, although the same issue is presented. Thus, assuming for the sake of argument that, because of the *Gamet* rule, Pinkney could not rely on or utilize the deposition testimony to show eligibility had she filed a direct action for PIP benefits, it does not necessarily follow that the deposition testimony is likewise restricted in a suit by the medical center. Again, the *Gamet* rule is ultimately an evidentiary rule of preclusion applicable to summary disposition motions, and there is no basis, given its purpose, to employ it here against the medical center.[13]

Finally, the trial court wholly failed to take into consideration the affidavits from Pinkney and Talison's friends, which, while not directly speaking to the question of whether Pinkney had permission from Talison to drive the Jeep on the particular occasion at issue, lent support for a conclusion that Pinkney generally had free reign to operate the vehicle. Indeed, all three affiants stated that they saw Pinkney and Talison leave a party earlier on the night of the accident and that Pinkney drove the Jeep with Talison, who was inebriated, as a passenger in the vehicle. Because we have ruled that the deposition testimony by Pinkney and Talison should have been considered by the trial court and was not barred from consideration under the *Gamet* rule, we decline to determine whether the friends' affidavits, in and of themselves, created a genuine issue of material fact on the question of permission and whether there was an unlawful taking of the Jeep.

## IV. CONCLUSION

The trial court erred in not considering Pinkney's and Talison's deposition testimony for purposes of determining whether a genuine issue of material fact existed, MCR 2.116(C)(10), with respect to the application of MCL 500.3113(a).[14] The *Gamet* rule does not apply given the procedural posture and circumstances of this case. Moreover, the trial court erred in not considering the affidavits by the three friends. In sum, the trial court erred in granting summary disposition in favor of the association.

---

[13] We recognize that Pinkney will benefit if the medical center is ultimately successful in its suit; nevertheless, the *Gamet* rule should not be employed to deprive an innocent party such as the medical center from attempting to make its case simply because of a potential indirect benefit to a purported wrongdoer.

[14] The association does not argue that a genuine issue of material fact would still be lacking if the deposition testimony is considered. The association makes a brief mention of judicial estoppel, but then concedes that the doctrine is inapplicable in this case. See *Opland v Kiesgan*, 234 Mich App 352, 362; 594 NW2d 505 (1999) (doctrine requires, in part, some indication that a court in an earlier proceeding accepted a party's position as true).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Having fully prevailed on appeal, taxable costs are awarded to the medical center under MCR 7.219.

/s/ Kurtis T. Wilder
/s/ William B. Murphy
/s/ Peter D. O'Connell